**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA** :
:
**v.** : **CRIMINAL CASE NO. 23-cr-00392-JEB**
:
**CHRISTOPHER RODRIGUEZ,** :
:
**Defendant.** :

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S APPEAL OF THE MAGISTRATE COURT'S DETENTION ORDER**

The United States of America hereby respectfully submits its Opposition to Defendant Christopher Rodriguez's Appeal of the Detention Order issued by a magistrate judge in the Western District of Louisiana (ECF No. 9, supplemented by ECF No. 13). Defendant has been charged by indictment with violations of, *inter alia*, 18 U.S.C. § 844(i), Explosives—Malicious Use, which creates a rebuttable presumption of detention under 18 U.S.C. § 3142(e)(3)(C). Defendant has not rebutted that presumption. Moreover, the government will show that no condition or combination of conditions will reasonably assure the appearance of Defendant as required or, by clear and convincing evidence, the safety of any other person and the community.

## I. Procedural Posture

On November 4, 2023, Magistrate Judge Robin M. Meriweather signed a criminal complaint that charged Defendant with violations of 18 U.S.C. § 970(a) (Damaging Property Occupied by Foreign Government); 18 U.S.C. § 844(h) (Explosive Materials—Commission of a Federal Felony); 18 U.S.C. § 844(i) (Explosive Materials—Malicious Use); and 26 U.S.C. §§ 5841, 5861(d), and 5871 (Receipt or Possession of Unregistered Firearm). Defendant was arrested

that same evening in Lafayette, Louisiana, more than 400 miles from his residence in Panama City, Florida, with an unknown destination. Defendant made his initial appearance in the Western District of Louisiana on November 7, 2023. On November 9, 2023, Defendant was indicted on the same charges as those alleged in the criminal complaint.

On November 14, 2023, following testimony by an ATF agent for the government and two prospective third-party custodians for the defense, Magistrate Judge David J. Ayo of the Western District of Louisiana ordered Defendant detained pending trial.

## II. Facts

### A. Summary of Probable Cause

The affidavit supporting the criminal complaint (Affidavit), incorporated by reference, details the facts of this case.[1]

On or about September 25, 2023, sometime between midnight and 3:00 am, Defendant placed a black backpack containing about 15 pounds of binary explosive material about 12 feet from the back wall and fence of the Embassy of the People's Republic of China (Chinese Embassy), located at 3505 International Place, N.W., Washington, D.C., and then attempted to detonate the explosive material by shooting at it with a rifle or other firearm. Defendant was unsuccessful and left the scene; he then returned to his home in Panama City, Florida.

Soon after Defendant left the scene, a U.S. Secret Service officer discovered the unattended black backpack. When law enforcement officers looked inside, they found about 14 pounds of grey granular material in a bag of charcoal briquets, along with two additional plastic containers with an additional one-half pound of the grey granular material in each container. One of the containers

[1] A copy of the Affidavit is attached hereto as Exhibit 1.

had a partial label reading, "Rifle Targets." This material is believed to have been an explosive mixture of ammonium nitrate and aluminum. Three shell casings and bullet fragments were located near the scene and impact marks were located on the wall near the bullet fragments behind the backpack. Subsequent analysis has determined that the shell casings and bullet fragments are consistent with a 223/5.56 caliber rifle.

Video surveillance of the area around the University of the District of Columbia (UDC) beginning at approximately 1:55 a.m. shows a person—believed to be Defendant—walking through the UDC campus carrying a dark-colored backpack, a bag consistent in shape with a rifle bag, and what appears to be a messenger bag. The surveillance also shows this person placing the backpack at the location where it was later found by the Secret Service officer at approximately 2:17 a.m. and moving about the area for an additional 15-20 minutes.

Testing of DNA found on the unattended backpack revealed a match with evidence obtained from a previous arrest of Defendant in California. DNA obtained from Defendant pursuant to a buccal swab warrant has since confirmed the DNA match, ruling out another individual by a probability of one trillion to one.[2]

[2] On June 27, 2021, Defendant was arrested in Los Angeles County, California, by California Highway Patrol (CHP). Defendant was in a 2016 Jeep Patriot, with Texas license plate BC53303, at the time of his arrest. CHP queried the Texas license plate and determined it did not match the vehicle. CHP then queried the vehicle's VIN and determined that Florida license plate 35AFPD was the license plate assigned to the vehicle, and that the vehicle was registered to Defendant. CHP officers approached the vehicle and observed a firearm on the center console. They recovered two additional firearms and charged Defendant with possession of loaded/concealed firearm in a vehicle, possession of an unregistered firearm, and possession of a switchblade knife, all in violation of California law. CHP subsequently obtained a search warrant for the vehicle. During the search of the vehicle officers located several bags and jars labeled Tannerite. Tannerite is a brand of exploding targets that is consistent with the substance recovered from the backpack found outside the Chinese Embassy, as discussed above.

After DNA evidence led investigators to Defendant, subsequent investigation uncovered his cash purchases of various items used in the attempted attack on the Chinese Embassy—the black backpack, nitrile gloves, a "burner" phone, and a bag of charcoal briquets—at two separate Walmart stores in Harrisonburg and Charlottesville, Virginia, on September 24, 2023, the day before the attack. License plate detection readers established that a jeep with Florida license plates registered in Defendant's name was traveling in the location of the Harrisonburg Walmart near the time of the Harrisonburg Walmart purchases. Cell site location data obtained for the phone number listed on Defendant's Florida bar profile (xxx-xxx-9526) showed that this phone was in the general location of both the Harrisonburg and Charlottesville Walmart stores around the time of the relevant purchases. Cell site location data for this phone shows the phone using cell sites in the Charlottesville area until approximately 9:02 p.m. There is no cell site location data recorded on this device from approximately 9:02 p.m. on September 24, 2023, to 10:52 a.m. on September 25, 2023, when the device is again using a cell site in the Charlottesville area. Possible explanations include that Defendant left his cell phone in Charlottesville while he traveled north to the D.C. area and attempted the explosives attack near the Chinese Embassy and that he turned the phone off or into airplane mode for a period of time to hide his location.

As noted above, one of Defendant's Walmart purchases was a burner phone. The phone was serviced by TracFone and registered to an account with an email address in a fake name. Phone records received from TracFone show calls from the phone number registered to the burner phone bought at the Charlottesville Walmart to a taxicab company serving Washington, DC, and Northern Virginia between the hours of approximately 1:00 a.m. and 3:00 a.m. on September 25, 2023. Receipts from the taxicab company tie this same phone number to trips, paid for in cash,

between Arlington, Virginia, and a few blocks from the Chinese Embassy just before and after the subject is seen in the video surveillance footage described above.

License plate detection readers do not appear to have captured Defendant's vehicle north of Harrisonburg, Virginia, on September 24 or 25, 2023. Video surveillance from the Charlottesville Walmart in the afternoon and evening of September 24, 2023, supplies the reason—The driver of the vehicle, believed to be Defendant, can be seen moving in and around the rear of the vehicle in the Walmart parking lot, and surveillance footage of the vehicle before and after these movements shows that the rear license plate of the vehicle is covered with some dark substance and no longer legible in the later footage.

On or about November 4, 2023, GPS tracking data from Defendant's Jeep Patriot bearing Florida license plate 35AFPD revealed that the vehicle had continued traveling west to Louisiana, with an unknown destination. At the same time, cell site location information for Defendant's phone number xxx-xxx-9526 showed the phone to be in or near Pensacola, Florida, several hours away. Location information for the phone shows that it remained in the Pensacola, Florida area from November 4, 2023, until November 14, 2023, when it was seized by law enforcement. The phone was found in a bag left at the residence of an associate of Defendant's—without that associate's knowledge.

Defendant was arrested in Lafayette, Louisiana, at approximately 8:00 p.m. on November 4, 2023. A search of Defendant's Jeep Patriot bearing Florida license plate 35AFPD uncovered approximately $2,300 in cash; a U.S. passport in Defendant's name; nitrile gloves, masks, and clothes consistent with those worn in surveillance camera footage (including a neon yellow long-sleeved shirt and a canvass messenger bag); and duffle bags containing clothing. The vehicle search also revealed a document addressed to Defendant with the phone number XXX-XXX-1785

written on it. This number is associated with the "burner" phone purchased from the Charlottesville Walmart. Also written on this document was the e-mail address used in connection with the first "burner" phone that was purchased and returned (as described in the Affidavit). The address "4500 Connecticut Ave NW DC 20008" was also written on the same document; this is the same address shown in the receipts from the taxicab company discussed above.

**B. <u>Defendant's Lack of a Fixed Address</u>**

As soon as Defendant was identified as a possible suspect in the September 25, 2023 attempted attack near the Chinese Embassy, law enforcement officers began trying to identify his residence through records searches, physical surveillance, GPS tracking on his vehicle (the 2016 Jeep Patriot), and cell site location information for his known cell phone. To date, officers have been unable to determine a residence where Defendant was living in the weeks before his arrest and it appears he was sleeping in his office.

Defendant told the Pretrial Services Administration (PSA) in the Western District of Louisiana and in the District of Columbia that his address is 1730 Mallard Drive #B, Panama City, Florida 32404, but visits to this address by law enforcement officers found little evidence of Defendant's residence at this location. Based on physical surveillance, Defendant visited his office in Panama City, Florida, at all hours of the day and night and was not observed at the address on Mallard Drive between October 10, 2023, and the date of his arrest. GPS tracking information from Defendant's vehicle for the period October 20, 2023, to November 4, 2023, showed approximately five hits in the area of Mallard Drive, all on October 29, 2023, between 1:58 and 3:11 p.m. local time. An individual who appears to reside at the Mallard drive residence acknowledged knowing Defendant and indicated that a room containing no furniture was Defendant's room.

This evidence of Defendant's attempted explosives attack near the Chinese Embassy, his use of various means to evade detection, the elaborate nature of Defendant's scheme as set forth in the Affidavit, Defendant's lack of a fixed address, and other evidence that the government would argue in a hearing before this Court provide an ample factual basis for the Court to order Defendant detained.

**III.   Review of the Magistrate's Detention Order Properly Lies With This Court.**

This Court has sole authority to review the magistrate judge's release order and may stay that order pending review. 18 U.S.C. § 3145 provides as follows:

> **(a) Review of a release order. –** If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court –
>
> > (1) the attorney for the Government may file, *with the court having original jurisdiction over the offense*, a motion for revocation of the order or amendment of the conditions of release;

18 U.S.C. § 3145(a)(1) (emphasis added). The phrase "the court having original jurisdiction over the offense" has been interpreted to refer to a court in the district where the charge is pending. Courts have further held that *only* a district court judge in that district, and none other, has authority to review the release order. *See United States v. Cisneros*, 328 F.3d 610, 615-16 (10th Cir. 2003) (the court having "original jurisdiction over the offense" is "the district . . . in which the prosecution is pending"; the government's "motion should be considered and ruled upon in the first instance by a district judge in the court of original jurisdiction"); *United States v. El-Edwy*, 272 F.3d 149, 152-54 (2d Cir. 2001) ("With respect to the decision whether to detain or conditionally release the defendant, however, section 3145(a) makes clear that the ultimate authority lies with the district that has the primary interest in the question – the district in which the prosecution is pending");

*United States v. Torres*, 86 F.3d 1029, 1031 (11th Cir. 1996) ("The plain language of section 3145 dictates that the district court with original jurisdiction over the offense, *i.e.,* the prosecuting district . . . is the only proper one to review the order in question"); *United States v. Manley*, No. 21-cr-691-TSC-ZMF, 2023 WL 2297484, at *2, (D.D.C. March 1, 2023) (D.C. District Court had original jurisdiction over offense, and thus a D.C. district court judge could review detention order issued by magistrate judge in District of Alaska, where grand jury indictment against the defendant was returned in D.C. District and that was where the prosecution was pending).

The Court should review the magistrate's detention order *de novo*. *See, e.g., United States v. Tortora*, 922 F.2d 880, 883-84 (1st Cir. 1990) (district court engages in *de novo* review of contested pretrial release or detention order made by magistrate); *United States v. Delker*, 757 F.2d 1390, 1392-95 (3d Cir. 1985) (district court must undertake *de novo* review of contested release orders issued by magistrate); *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985) (district court had authority to detain defendant after de novo review of the conditions of magistrate's release order); *United States v. Hurtado*, 779 F.2d 1467, 1480-81 (11th Cir. 1985) (district court erred in relying solely on magistrate's detention findings); *United States v. Hudspeth*, 143 F.Supp.2d 32, 35-36 (D.D.C. 2001) (Kennedy, J.). At a detention hearing, the government may present evidence by way of a proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

## IV. Defendant Should Be Detained Pending Trial, as He Poses a Risk of Flight and a Danger to the Community.

A defendant must be detained pending trial if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). A finding of either risk

of flight or danger is sufficient for detention. *See, e.g., United States v. Ferranti*, 66 F.3d 540, 543-44 (2d Cir. 1995). The former must be proved by a preponderance of the evidence, *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996), and the latter by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B).

As noted above, Defendant has been charged by indictment with violations of 18 U.S.C. § 844(i), Explosives—Malicious Use, which creates a rebuttable presumption of detention under 18 U.S.C. § 3142(e)(3)(C). "This presumption does not force 'the [defendant] to carry the Government's burden of proof or persuasion,' but it does 'operate[ ] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Dawodu*, No. CR 21-163 (JDB), 2022 WL 1556403, at *3 (D.D.C., May 17, 2022) (Bates, J.) (quoting *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985)). "[T]he Court 'may rely on a grand jury indictment to establish probable cause for the purposes of triggering the rebuttable presumption of section 3142(e).'" *United States v. Muschetta*, 118 F. Supp. 3d 340, 344 (D.D.C. 2015) (Howell, J.) (quoting *United States v. Williams*, No. 90-3070, 1990 WL 73191, at *1 (D.C. Cir. June 4, 1990) (per curiam)). "Even if he does so, however, 'the presumption remains as a factor to be considered by the Court amongst others in determining whether the defendant should be detained.'" *Dawodu*, 2022 WL 1556403 at *3 (quoting *United States v. Ali*, 793 F. Supp. 2d 386, 388 (D.D.C. 2011)).

In assessing the risk of flight and danger presented by Defendant, the Court should consider the following factors: (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of Defendant, and (4) the nature and seriousness of the danger posed by Defendant to any person or the community. 18 U.S.C. § 3142(g). As set forth more fully below, each of these factors militates in favor of Defendant's detention pending trial.

**A. <u>The Nature and Circumstances of the Offense</u>**

The nature and circumstances of this case support detention based on a risk of flight and the danger posed by Defendant to the community. By its very nature, this case involves a defendant who attempted to detonate explosives in an urban area, apparently by use of a rifle or other firearm. One of the charges, 18 U.S.C. § 844(i), Explosives—Malicious Use, is so serious that it creates a rebuttable presumption of detention based on the perceived risk of flight and danger to the community posed by a defendant who has been charged with such an offense.

The possible maximum terms of imprisonment that Defendant faces upon conviction reflect the seriousness of the charged offenses and provide an incentive to flee. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). Defendant faces up to 5 years of imprisonment for the violation of 18 U.S.C. § 970(a), a mandatory minimum of 10 years in prison for the violation of 18 U.S.C. § 844(h), between 5 and 20 years in prison for the violation of 18 U.S.C. § 844(i), and up to 10 years in prison for the violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. Courts have repeatedly held that with serious charges and the possibility of considerable punishment comes "a substantial incentive to flee the United States." *See United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (finding detention appropriate for defendant facing stiff penalties for bribery and visa fraud). Simply put, Defendant has little incentive to appear before this Court and submit to the jurisdiction of the United States. Moreover, Defendant has shown himself to be a danger to the community by his commission of the charged offenses.

The defendant focuses on the fact that the contents of the backpack did not explode and that it was placed near the Chinese Embassy wall at approximately 2:00 a.m. (ECF No. 13 at 5-6.) The defendant ignores the inherent danger in the defendant's having left the backpack filled with

approximately 14 pounds of a binary explosive mixture unattended, creating a continuing risk of danger.

**B. The Weight of the Evidence Against Defendant**

The weight of the evidence against Defendant is substantial. As detailed in the Affidavit, the evidence includes a DNA match between Defendant and DNA recovered from the backpack containing explosives found at the scene, video surveillance, purchase records of components used in the attempted attack, license plate detection records, cell site location data, phone records, and the results of the search of Defendant's vehicle after his arrest—which tie him to the crime.

**C. The History and Characteristics of Defendant**

Defendant is a U.S. citizen, born in Puerto Rico, who claims strong family ties and significant ties to the northern Florida community. He is a practicing criminal defense attorney in Florida. Defendant has a prior misdemeanor conviction for weapons offenses in the state of California. The circumstances of that June 2021 arrest are strikingly similar to the conduct in this case. Defendant was found in his vehicle—the same one used in connection with the instant offenses—along with containers labeled Tannerite, a brand of binary explosives and three firearms.[3]

When he was interviewed in the Western District of Louisiana by the PSA, Defendant listed his address as 1730 Mallard Drive, Panama City, Florida, and stated he had lived there since November 1, 2022. Defendant provided this same address, with the addition of Unit B, to PSA in the District of Columba on November 22, 2023. Defendant told PSA in the Western District of Louisiana that he does not own any firearms and that there are no firearms in his residence. These

---

[3] Defendant fails to mention the details of this prior arrest in his motion for appeal or in his supplemental brief. Cf. ECF No. 9 and ECF No. 13 at 8.

claims are belied by the investigation in this case, which has revealed that Defendant: (1) has no fixed address and has not resided at the address on Mallard Drive since at least October 10, 2023; and (2) possessed three firearms in June 2021 and used a rifle or other firearm to attempt to detonate explosives near the Chinese Embassy on September 25, 2023.

Although Defendant presented two possible third-party custodian options (his mother and brother in Puerto Rico and two non-relatives in Panama City, Florida) during the detention hearing held in the Western District of Louisiana, those options do not overcome his lack of a fixed address, his apparent lies to PSA, and his lack of any ties to the District of Columbia. In short, if released, there are no ties to the community strong enough to cause Defendant to remain in the jurisdiction and return to court to face the charges pending against him. Moreover, as Defendant has shown knowledge of how to hide his criminal behavior this Court has no reason to trust his word that he will abide by conditions of release and appear as directed in this Court.

### D. The Nature and Seriousness of the Danger Posed by Defendant to Any Person or the Community

Defendant presents a significant danger to the community. He has shown his willingness to experiment with explosives and risk harm to other individuals and to himself, both in connection with his June 2021 arrest and in the attempted explosives attack near the Chinese Embassy on September 25, 2023. Regarding the attempted attack near the Chinese Embassy, Defendant endangered members of the District of Columbia community by placing explosive material inside the backpack and leaving it unattended and by attempting to detonate the explosive material by firing at it from some distance away.

Further, Defendant went to great lengths to hide his criminal activity and has shown his ability and willingness to attempt to evade detection by using a burner phone, covering his license plate, taking taxicabs to and from the scene of the crime, paying in cash, wearing a face mask, and turning his phone off or leaving it behind for extended periods of time.

## V. Conclusion

For the foregoing reasons, the government respectfully moves this Court to order that Defendant be detained pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

*/s/JOLIE F. ZIMMERMAN*
Jolie F. Zimmerman
D.C. Bar Number 465110
Assistant United States Attorney
National Security Section
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7220
Jolie.Zimmerman@usdoj.gov