UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | CRIMINAL NO. 23-cr-392-JEB |
| v. | : | |
| | : | |
| **CHRISTOPHER RODRIGUEZ,** | : | |
| | : | |
| **Defendant.** | : | |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION OF THE APPEAL OF DETENTION ORDER**

Mr. Christopher Rodriguez files this Reply to address arguments and incorrect assumptions made by the government in its Opposition, ECF No. 14. Importantly, the government does not answer the three primary points in the Defense's appeal: 1) that the substance used, Tannerite, is not classified as an explosive and could not have caused damage to any building or even curtilage; 2) that the backpack was placed by the *curb* alongside the street which is neither on Chinese Embassy property or on the curtilage of that property; and 3) that there is no evidence that Mr. Rodriguez is a person who is dangerous to others. Instead, the government invites the Court to engage in innuendo and speculation, asserting that he is a risk of flight primarily because the government incorrectly believes that he has no fixed address. The government's arguments for the preventative detention of a presumed innocent veteran, a practicing attorney and a man with a scant criminal record lack merit and this Court should release Mr. Rodriguez under conditions it deems appropriate.

  **I.**  **Mr. Rodriguez's residence**

The government raises questions about Mr. Rodriguez's living situation but those questions are easily explained by the circumstances surrounding Mr. Rodriguez's life. First and

foremost, Mr. Rodriguez, who has worked as a public defender and then a solo practitioner, recently agreed to work with the Musca Law Firm as a contract attorney. The Musca Law Firm has thirty offices across the state of Florida (www.muscalaw.com) and their contract with Mr. Rodriguez required him to work primarily out of the Pensacola office. However, Mr. Rodriguez also had his own clients and had leased an office in Panama City. The respective offices are about a 2 ½ hour drive away from each other.

At the time of the surveillance, Mr. Rodriguez had vacated his residence on Mallard Drive with the intention of renting it out (he had already been renting out the first floor to a tenant). He was to move in with a friend near Pensacola on November 1st but for unforeseen reasons, his friend could not move until December 1st, leaving Mr. Rodriguez with no place to say. But because he had moved his furniture and belongings out of the Mallard Drive address, he often opted to sleep in the vicinity of work as he was continuing to lease his solo office space in Panama City, which was across the street from Musca Law's Panama City office. He also stayed with his friend Mr. McGuire when he had to be in Pensacola. In sum, Mr. Rodriguez correctly reported the address of his residence as he continues to own and receive mail at the Mallard Drive address.

The entire narrative of a lawyer-gone-rogue depicted by the government is based only on unwarranted suspicion and is entirely unsupported by or in reality. For example, the government claims that he was "not observed at the address on Mallard Drive between October 10, 2023 and the date of his arrest." ECF No. 14 at 6. But Mr. Rodriguez was working for his clients in both Panama City and Pensacola at the time. For example, he appeared in court in Pensacola on

November 2nd, shortly before he was arrested and stayed with his friend Thomas McGuire and his girlfriend on occasion.[1]

The government also alleges that Mr. Rodriguez lied when he informed Pretrial Services "that he does not own any firearms and that there are no firearms in his residence." ECF No. 14 at 11-12. It's proof of Mr. Rodriguez' "deception" is the fact that he possessed three firearms in June 2021 and the facts of the instant case. This, of course, is not at all prove possession of firearms within his residence or his ownership of firearms on November 4, 2023. In truth, Mr. Rodriguez relayed accurate information to Pretrial Services – he does not own any firearms and there are no firearms in his residence. He was not asked if he *ever* owned and possessed a firearm – indeed, he has possessed many - both when he actively served his country in Iraq and when he was an agent for the Criminal Investigations Division for the U.S. Army. But the questions posed by Pretrial Services are not investigative and despite the government's urging, no negative inference can reasonably be drawn by the fact that he accurately answered the question posed to him.

## II.   The factors weighed under 18 U.S.C. 3142.

1. Nature and Circumstances of the Offense Charged

The government relies solely upon the offenses that it has charged Mr. Rodriguez with in arguing that this factor weighs in favor of detention. But the government does not even attempt to rebut the ATF's determination that Tannerite is not an explosive – a factor that may not have been presented to the grand jury. Instead, the government argues that there is "inherent danger"

---

[1] Even to this day, Mr. Rodriguez has clients who are detained – given that the government possesses all of his electronic devices and because he has been unable to access his files, he is unable to contact them, arrange for stand-in counsel or to seek extensions of plea offers.

in leaving the backpack 'unattended, creating a continuing risk of danger." ECF No. 14 at 9-10. But again, it declines to explain its conclusory statements.

In reality, "unattended" Tannerite is safe – it is stable unless it is shot with a bullet that is travelling at the speed of 2000 feet per second. According to its website, "Tannerite brand targets were specifically designed to be safe, whether it's sitting on a shelf, being mixed or used. When shot with a high-power rifle it produces a water vapor and a thunderous boom resembling an explosion." https://tannerite.com/about-tannerite-sports/.

Tannerite is unregulated and can be purchased on the internet without so much as a verification of age or an identification. It is less regulated than cigarettes, fireworks and cough medicine. And during this holiday season, it can be purchased at a 20 percent discount on the Tannerite website.



It bears repeating that Tannerite is unregulated by the ATF because it is not considered an explosive. This is not to say that Tannerite can never be dangerous as it can cause a loud explosive sound and a cloud of smoke and can damage something in its immediate vicinity. Tannerite can be combined with other materials that could cause serious damage and bodily harm if mixed with shrapnel, for example, nails. But the backpack did not contain anything that would cause additional damage. And in this case, the backpack did not explode.

2. The weight of the evidence

The Defense has not yet received any discovery and is thus handicapped from analyzing the weight of the evidence. But it is already apparent that Mr. Rodriguez did not have any weapons when he was arrested. And though the government referenced a vehicle captured on surveillance in the Complaint, p. 6, there is no evidence connecting that individual to Mr. Rodriguez. And were the vehicle involved in the incident, it would entirely undermine the government's theory about Mr. Rodriguez's supposed phone calls to transport himself into the District.

In addition, the backpack was apparently discovered on a curb, undermining the theory that it was intended to do any damage to even the curtilage of a building far from a metal fence atop a stone wall.

3. History and Characteristics of the Defendant

The government asks the Court to weigh this factor in favor of detention, relying only upon his June 2021 arrest and his statements to Pretrial Services. While the Defense has little information about the 2021 case, it appears that the prosecution and the judge in that case had a different view from this prosecution - Mr. Rodriguez was sentenced only to probation

As previously stated and as demonstrated by the attached letters, Mr. Rodriguez is well respected in the community and cared for by friends and family.  He is a practicing attorney, a volunteer with the Kiwanis Club, a veteran who has served in Iraq, a law enforcement officer for the Army and a person with a sole conviction, for which he received and successfully completed probation.  As mentioned above, the government's arguments about his statements to Pretrial Services were entirely truthful and his living circumstances were sensible under his circumstances.  The Defense has spoken to other individuals that corroborate that Mr. Rodriguez was in the process of moving his residence to the Tallahassee area for work.

    4.   The Nature and Seriousness of the Danger to Any Person in the Community

The government asserts that Mr. Rodriguez is dangerous because he showed a willingness to risk harm to others - but again does not support its conclusions with facts.  The government's proffered evidence demonstrates the contrary:  the incident here occurred after 2 am where there were no individuals present that could have been harmed. The backpack contained none of the supplemental materials that would make it harmful to those around them. The backpack was placed by the curb, feet away from the concrete wall and metal fence and at a substantial distance from the embassy walls.  The substance found in the backpack is known for making extremely loud noises but with minimal damage when not placed in enclosed areas.  And there is no evidence that Mr. Rodriguez presents a danger from either his past or from a significant investigation into his personal life, including his devices and physical tracking of his movements.

The government does not present any arguments about Mr. Rodriguez's proposed release plan – nor could it.  He can ably be monitored by his brother – an officer of the court; and/or his

mother.[2] Any potential flight issue is mitigated by the seizing of his passport and the fact that he would reside on an island that has no ferry service to the mainland. And Mr. Rodriguez has completed probation successfully – demonstrating that he is willing and able to comply with the Court's conditions.

## Conclusion

Wherefore, for the foregoing reasons, the government has not met its burden of demonstrating that there no conditions or combination of conditions that will assure the safety of the community. Mr. Rodriguez respectfully requests that the Court vacate the detention order and place Mr. Rodriguez at his mother's home in Puerto Rico and to appoint a third-party custodian and to order him to stay in Puerto Rico.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
EUGENE OHM
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500

---

[2] If it is preferable to the Court, Mr. Rodriguez also has options for a Third Party Custodian in Panama City, Florida.