UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 23-cr-392 (JEB) |
| | : | |
| CHRISTOPHER RODRIGUEZ, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' MOTION TO VACATE TRIAL DATE, CONTINUE TRIAL, AND EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**

The United States, by and through the undersigned attorneys, respectfully moves this Court to: (1) vacate the trial date currently set for March 4, 2024, and continue the trial; (2) set a status conference in 30 days to monitor the government's progress in meeting its discovery obligations; and (3) exclude the time within which a trial must commence under the Speedy Trial Act, 18 U.S.C. §§ 3161-3174 (STA) from March 4, 2024, to the date of the next status conference on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. §§ 3161(h)(7)(A), (B)(i), (ii), and (iv). As explained below, a continuance would be consistent with the STA and due process.

First, a continuance of the trial is within the Court's discretion and would avoid a situation that might result in a miscarriage of justice. *See* 18 U.S.C. §§ 3161(h)(7)(A) and (B)(i), (iv). Although the government has acted with due diligence in gathering, reviewing, and producing discovery, the government has not completed its production of discoverable materials pursuant to Federal Rule of Criminal Procedure 16(a) and the *Brady*[1] doctrine. The government is seeking a continuance to allow time for it to complete discovery and for the defense to have adequate time

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

to review this material. Despite the government's diligent efforts, given the nature and volume of potentially discoverable material, discovery will not be completed by the time of the currently-scheduled trial. Accordingly, the government requests that the Court set a status hearing in 30 days to monitor the government's progress in complying with its discovery obligations and determine whether a trial date should be set at that time.

Second, an ends-of-justice continuance would be appropriate due to the complexity of the case presented by Defendant's status as a practicing attorney. *See* 18 U.S.C. § 3161(h)(7)(B)(ii). The Court should make clear and specific findings that the case is unusually complex and that the ends of justice justify the continuance based on the large volume of electronic evidence in this case that requires reasonable time for the prosecution to access and gather evidence and prepare for trial, especially because of Defendant's status as a practicing attorney, which presents unique challenges for the prosecution's review of evidence.

Third, a continuance of the trial would be consistent with due process. Although he is detained, the length of Defendant's detention does not yet give rise to due process concerns.

Fourth, because no time has elapsed on the 70-day STA trial clock, a continuance of the trial of up to 70 days, or until May 13, 2024, would require no STA tolling and is also within the Court's discretion.

After conferring, counsel for Defendant informed the government that Defendant opposes the relief requested in this motion.

As grounds for this motion, the government further states as follows:

## BACKGROUND AND PROCEDURAL HISTORY

Defendant is an attorney licensed to practice in Florida, who has practiced as a criminal defense attorney in Panama City and Pensacola, Florida. On September 25, 2023, sometime

between midnight and 3:00 a.m., Defendant attempted to conduct an explosive attack outside the Embassy of the People's Republic of China (Chinese Embassy), located in Washington, D.C. Defendant placed a black Walmart-brand backpack, containing about 15 pounds of explosive material, about 12 feet from the back wall and fence of the Embassy. Defendant used a type of explosive material that is detonated by shooting at it with a rifle. Defendant is believed to have shot at the backpack the night of the attack, but he apparently missed. Three shell casings and bullet fragments were located near the scene, and impact marks were located on the wall near the bullet fragments behind the backpack.

The backpack containing the explosives was recovered from the scene on September 25, 2023. DNA obtained from the backpack was found to be consistent with DNA evidence obtained from a previous arrest of Defendant in June 2021 in California. During the California incident, Defendant possessed three firearms and apparent explosive material consistent with the explosives used during the Chinese Embassy attack. DNA evidence obtained from Defendant pursuant to a buccal swab warrant has since confirmed this DNA match.

On November 4, 2023, Magistrate Judge Robin M. Meriweather signed an arrest warrant based on a criminal complaint that charged Defendant with violations of 18 U.S.C. § 970(a) (Damaging Property Occupied by Foreign Government); 18 U.S.C. § 844(h) (Explosive Materials—Commission of a Federal Felony); 18 U.S.C. § 844(i) (Explosive Materials—Malicious Use); and 26 U.S.C. §§ 5841, 5861(d), and 5871 (Receipt or Possession of Unregistered Firearm).

Defendant was arrested on November 4, 2023, and has been detained since his arrest. On November 9, 2023, Defendant was indicted on the same charges as those alleged in the criminal complaint.

On November 22, 2023, Defendant had his initial appearance in the District of Columbia and was arraigned on the indictment by Magistrate Judge Moxila A. Upadhyaya. On the government's motion and over Defendant's objection, Judge Upadhyaya ordered time excluded under the STA from November 22, 2023, to December 1, 2023. Defendant filed a motion to appeal his detention order that same day (November 22, 2023).

On December 1, 2023, this Court held a status conference. The Court appointed Eugene Ohm as Defendant's attorney and set a bond hearing for December 15, 2023. The Court also set a trial date of March 4, 2024, and tolled time under the STA from December 1, 2023, to March 4, 2024.

The Court denied Defendant's bond motion at the December 15, 2023 hearing and set a status conference for January 22, 2024. At the January 22, 2024 status conference, the parties discussed the feasibility of proceeding to trial on March 4, with the government noting that it had not yet completed its discovery review and production and the defense indicating it was not willing to agree to a continuance. The Court set a further status conference for February 9, 2024, and ordered the government to provide expert notice by February 16, 2024.

## GOVERNMENT'S COLLECTION AND REVIEW OF EVIDENCE

The government's investigation began on September 25, 2023, the date the backpack containing explosives was found outside the Chinese Embassy, just over four months ago. Since then, the government has issued 41 evidentiary subpoenas, obtained two Section 2703(d) orders, and executed 12 search warrants, including warrants seeking cell phone tower records and cell site location records relevant to the investigation. The government also obtained evidence produced voluntarily, such as video surveillance footage from the area in and around the attempted explosives attack at the Chinese Embassy.

4

At or near the time of Defendant's arrest on November 4, 2023, the government obtained search warrants targeting his vehicle and a cell phone on his person found incident to his arrest. After Defendant's arrest, the government executed four additional search warrants. On November 9, 2023, the government executed a warrant targeting Defendant's cellular telephone that he had left at the Pensacola, Florida residence of an associate. When the government executed this warrant, the government learned that Defendant had left additional electronic devices (a second cell phone and a laptop computer) at this residence; the government seized these devices pursuant to the consent of the associate's girlfriend, who also resided at the Pensacola residence. On November 14, 2023, the government obtained a search warrant targeting Defendant's Panama City, Florida office. On November 30, 2023, the government obtained a search warrant targeting Defendant's Pensacola, Florida office. The government could not have obtained any of these warrants before Defendant's arrest without alerting him to the investigation and risking his attempt to flee.

The search warrant targeting Defendant's vehicle included the authority to search all the electronic devices seized from that vehicle—two cellular telephones and 21 external storage devices (thumb drives, external hard drives, etc.).[2]

Because Defendant is an attorney, the government must follow certain practices and procedures to ensure that the attorney-client privilege rights of his clients are respected. Per

---

[2] The search warrants targeting Defendant's two offices did not include the authority to search any electronic devices seized from those offices. In the Northern District of Florida, the government must obtain a separate warrant, supported by a distinct affidavit, to search each and every electronic device. The government opted to transport the electronic devices seized pursuant to the two Northern District of Florida warrants, as well as those items seized pursuant to consent, to the District of Columbia and to apply for one search warrant targeting all these devices in this district. These 20 devices consist of four computers, two cell phones, one hard drive, and 13 thumb drives. A search warrant for these devices is pending before Magistrate Judge G. Michael Harvey.

Department of Justice policy, all search warrants targeting an attorney that may result in the seizure of attorney-client communications must be approved by the Policy and Statutory Enforcement Unit within the Criminal Division. Moreover, the investigative agency (here, ATF) and the U.S. Attorney's Office are required to establish filter procedures for the review of any material that may include attorney-client communications. The use of a filter team in these circumstances is appropriate. *See, e.g., In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means v. Korf, et al.*, 11 F.4th 1235, 1250 (11th Cir. 2021) ("[T]he records here are already in the government's possession as the result of the execution of a search warrant, so under *Winget [n In re Grand Jury Subpoenas ("Winget")*, 454 F.3d 511 (6th Cir. 2006)], the use of a filter team to review them is 'respectful of, rather than injurious to, the protection of privilege.' *Id*. at 522-23.").

The government instituted filter procedures beginning on or about November 7, 2023, to handle the processing and review of any material that could include attorney-client communications or attorney work product. These procedures have been and will be revised as circumstances dictate. To date, a small number of hard-copy documents have been released to the prosecution team after being cleared by the filter team.

The larger challenge for the filter team has been the review of the electronic devices seized in this case. The electronic devices that have been forensically imaged and provided to the filter team to date consist of 21 devices totaling approximately 1.24 terabytes of data and containing approximately 588,721 files; one cell phone containing approximately 298 GB of data; and one cell phone containing approximately 12.3 GB of data, for a total of more than 1.55 terabytes of

data.[3] Initially, the filter team was tasked to review all files to identify potentially privileged files to withhold from the prosecution team. Last month, the prosecution team provided the filter team with a list of relevancy search terms to streamline the filter review process. A filter team agent has completed an initial search of the 21 devices and two cell phones described above using relevancy search terms provided by the prosecution team. As the prosecution team's review of cleared materials progresses and once materials have been cleared for its review, additional relevancy search terms and other relevancy criteria (such as date ranges) may be added. No items from these electronic devices have yet been provided to counsel for Defendant, or to the prosecution team. To date, the filter team has identified approximately a few dozen items that the team has determined to be within the criteria provided by the prosecution team and nonprivileged.[4]

Pursuant to the (revised) filter protocol, the filter team attorneys will segregate and not disclose to the prosecution team any material that is outside criteria provided by the prosecution team. As to material that is within the criteria provided by the prosecution team, pursuant to the (revised) filter protocol filter team attorneys are to review the responsive results to ensure they do not include any attorney-client privileged material. The filter team attorneys will segregate potentially responsive material into four categories: (1) not protected; (2) protected but can be redacted; (3) potentially protected (*e.g.*, the government does not have sufficient information to make that determination, or an exception to the applicable protection, such as crime-fraud or waiver by disclosure to a third party, may apply); and (4) protected and cannot be redacted.

---

[3] These devices do not include any of the 20 devices targeted in the most recent warrant pending before Magistrate Judge Harvey.

[4] During its review, the filter team has encountered some Spanish-language material in the electronic devices it has reviewed. Accordingly, the filter team will need to run Spanish translations of many of the search terms (excepting numbers and proper nouns) through the imaged electronic devices and determine if any of those can be shared with the prosecution team. Any such results will also need to be translated.

The (revised) filter protocol further will provide that, before the filter team provides any potentially responsive material to the prosecution team, the filter team attorneys will send a copy of any such material in categories 1 through 3 (collectively "Privilege Review Material"), along with the bases for determinations that any potentially protected materials are subject to an exception, to counsel for Defendant and to counsel for Defendant's former law firm, along with a log. Upon receipt of these materials, counsel for Defendant and counsel for Defendant's former law firm will have the opportunity to review the materials and determine whether they are subject to privilege, fall within an exception to privilege, or can be redacted to eliminate the protected information. Privilege Review Material will only be disclosed to the prosecution team if (1) counsel for Defendant, and counsel for Defendant's former law firm consent (or fail to timely object) to disclosure; or (2) the Court determines that an item, in redacted or unredacted form, may be disclosed.

## **DISCOVERY PRODUCTIONS**

To date, the prosecution team has produced two rounds of discovery. The first round of discovery was produced on January 17, 2024, and consisted of 19,768 pages of electronic discovery. The native files alone account for approximately 46 GB of data. The second round of discovery was produced on January 29, 2024, and consisted of 5,510 pages of electronic discovery. The native files alone account for 63 GB of data, including several large video surveillance files. The discovery includes video surveillance footage, scene photos, subpoena returns, search warrant returns, lab reports, agent reports, and search warrant affidavits. Additionally, through the filter team, the government will be producing to the defense, in approximately two weeks, forensic copies of the 21 devices seized in the first set of search warrants.

The government is processing a third round of discovery that consists of about 5.23 GB of native data and includes additional agent reports, video surveillance footage, and interview reports. The government anticipates providing this production to defense by February 29, 2024. The government also intends to provide additional discovery, including: (1) all evidence provided to the prosecution team by the filter team, once that evidence has been cleared pursuant to the process described above; (2) forensic images of all electronic devices in the government's possession that belong to Defendant (including the 20 devices for which a search warrant is pending before Magistrate Judge G. Michael Harvey); (3) Grand Jury transcripts; (4) additional agent reports; (5) additional surveillance footage; and (6) cell site location information for a "burner" phone used by Defendant before and during the attempted attack on the Embassy.

## **ARGUMENT**

The United States seeks to vacate the trial date and continue this trial to allow time for the government to complete its collection, review, cataloging, and production of discovery pursuant to Federal Rule of Criminal Procedure 16(a) and *Brady*, *Giglio*,[5] and their progeny. To date, as shown above, the government has acted with due diligence in advancing the discovery process. The government has already disclosed to the defense more than 25,000 pages of electronic discovery, consisting of approximately 109 GB of native data, as well as load files and processed files (such as searchable Adobe Acrobat PDF files). At the same time, while the government has worked diligently to comply with its discovery obligations, given the unique situation, nature, and volume of materials at issue, the government will be unable to complete discovery in advance of the current trial date. As detailed above, the filter review of the electronic devices seized pursuant to the November 2023 search warrants is not yet complete. The government anticipates that the

---

[5] *Giglio v. United States*, 405 U.S. 150 (1972).

filter review process, and the remaining discovery productions, will be completed no sooner than May 1, 2024. The government will have a better estimate of the time needed in the next 30 days.

As such, the government requests that this Court set a status hearing in 30 days to monitor the government's progress in complying with its discovery obligations. If, at that time, the government needs additional time to complete its discovery obligations or the defense counsel needs additional time to complete its review of the discovery, the Court may then entertain any requests for an additional ends-of-justice continuance. Conversely, if all parties' discovery obligations are nearly complete, the Court can and should set a trial date.[6]

## I.     An Ends-of-Justice Continuance is Within This Court's Discretion.

Under the Speedy Trial Act, the Court may exclude time from within which to proceed to trial based on a continuance granted by the Court on its own motion, at the request of the defendant, or at the request of the government if the Court finds that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The decision to grant an ends-of-justice continuance is "entrusted to the district court's sound discretion," *United States v. Rice*, 746 F.3d 1074,1078 (D.C. Cir. 2014), but to justify a continuance, the Court must make concrete findings either orally or in writing that are supported by the record and specifically detail what factors the Court considered. *See* 18 U.S.C. § 3161(h)(7)(A); *Zedner v. United States*, 547 U.S. 489, 507-509 (2006). These findings must show that the trial judge "seriously weigh[ed] the benefits of granting the continuance against the

---

[6] At this time, the government is not seeking to continue this trial based on the 20 devices targeted in the warrant pending before Magistrate Judge Harvey. Should that warrant be granted, the government will triage its review of those devices using keyword relevancy searches, as described above, and date ranges to identify potentially relevant materials and to streamline the review of materials for attorney client privilege. Through the filter team, the government will also provide forensic images of these devices to defense for their review as part of the discovery process described above.

strong public and private interests served by speedy trials." *United States v. Bryant*, 523 F.3d 349, 361 (D.C. Cir. 2008).

### A. An Ends-of-Justice Continuance is Warranted Because the Failure to Review and Produce All Relevant Materials May Result in a Miscarriage of Justice.

Under the STA, the Court may exclude time as necessary if "the failure to grant such a continuance . . . would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." *See* 18 U.S.C. §§ 3161(h)(7)(A) and (B)(iv). Section 3161(h)(7)(B) also allows the Court to exclude time as necessary to serve the ends of justice if "the failure to grant such a continuance in the proceeding would be likely to . . . result in a miscarriage of justice." *See* 18 U.S.C. §§ 3161(h)(7)(A) and (B)(i). Such exclusion of time is appropriate here.

Requiring the government to try the case without affording it an opportunity to review, produce, and present necessary evidence could result in a miscarriage of justice. *See United States v. Klein*, 533 F. Supp. 3d 1, 21 (D.D.C. 2021) (granting an ends-of-justice continuance to allow the government to complete discovery and prepare its case); *United States v. Hill*, 197 F.3d 436, 442 (10th Cir. 1999) (upholding an ends-of-justice continuance granted to allow the government time to resolve issues with an essential witness); *see also United States v. Fielding*, 645 F.2d 719, 722 (9th Cir. 1981) (holding government's request for 30-day continuance was warranted to prevent miscarriage of justice where, despite exercise of due diligence, government was unable to determine whereabouts of three essential witnesses).[7]

---

[7] *See also United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019) (upholding two-month ends-of-justice continuance in firearm possession case, over defendant's objection, where five days before trial a superseding indictment with four new counts was returned, "1,000 pages of new discovery materials and eight hours of recordings" were provided, and the government stated that "it needed more than five days to prepare to try [the defendant] on the new counts"); *United States v. Vernon*, 593 F. App'x 883, 886 (11th Cir. 2014) (District court did not abuse its broad discretion

11

In this case, the government has acted with due diligence in gathering, reviewing, and producing discovery. Due to circumstances outside of the government's control, including the filter process necessary to prevent inadvertent disclosure of attorney-client communications relating to Defendant's clients, the government has not yet been able to review all potentially relevant information or to finish producing discovery.

Furthermore, there may be potentially exculpatory information that has yet to be retrieved, and it would also be a miscarriage of justice were the defendant to be convicted without the benefit of such potentially exculpatory information. To date, Defendant has not unequivocally waived his right to additional discovery in the case or his right to any potentially exculpatory information in the government's possession. Although the defense has indicated that they may be willing to waive additional discovery, this waiver may be challenged on appeal. A defendant can waive any of his rights, including his constitutional rights, provided the waiver was knowing and voluntary. However, there is a high threshold for establishing a knowing and voluntary waiver, and a defendant's "waiver" of the right to complete discovery is especially problematic when those materials might contain *Brady* information.

### B. An Ends-of-Justice Continuance is Warranted Because This Case is Unusually Complex.

Section 3161(h)(7)(B) of the STA allows the Court to exclude time as necessary to serve the ends of justice if a case is "so unusual or complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits

---

in case involving conspiracy to commit wire and mail fraud by granting two ends-of-justice continuances due to voluminous discovery).

established." *See* 18 U.S.C. §§ 3161(h)(7)(A) and (B)(ii). Such an exclusion is appropriate in this case.

As the Supreme Court has observed, the STA "recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases." *Zedner v. United States,* 547 U.S. 489, 497 (2006). "Much of the Act's flexibility is furnished by § 3161(h)([7]), which governs ends-of-justice continuances." *Id.* at 498. "Congress clearly meant to give district judges a measure of flexibility in accommodating unusual, complex, and difficult cases." *Id.* at 508. And it knew "that the many sound grounds for granting ends-of-justice continuances could not be rigidly structured." *Id.*

The Courts of Appeals, including the D.C. Circuit, routinely have held that cases involving voluminous discovery are sufficiently complex to justify ends-of-justice continuances and exclusions of time under the TA. *See, e.g., United States v. Bikundi*, 926 F.3d 761, 777-78 (D.C. Cir. 2019) (upholding ends-of-justice continuances totaling 18 months in two co-defendant health care fraud and money laundering conspiracy case, in part because the District Court found a need to "permit defense counsel and the government time to both produce discovery and review discovery").[8]

Since last November, the government has been working diligently to obtain, organize, review, and make accessible voluminous data, but performing the required tasks correctly and comprehensively takes time. The processing and production of relevant material contained on the seized electronic devices is complicated and time-consuming. As described above, the total data

---

[8] *See also Bell*, 925 F.3d at 374 (upholding two-month ends-of-justice continuance in firearm possession case, over defendant's objection, where five days before trial a superseding indictment with four new counts was returned, "1,000 pages of new discovery materials and eight hours of recordings" were provided, and the government stated that "it needed more than five days to prepare to try [the defendant] on the new counts"); *United States v. Jean*, 25 F.3d 588 (7th Cir. 1994) (District court did not abuse its discretion in granting two ends of justice continuances due to a larger ongoing investigation involving large amounts of recorded phone conversations).

13

stored on the 21 seized electronic devices, which include two cellular phones, one external hard drive, and 18 thumb (flash) drives, exceeds 1.4 TB.

While the volume of electronic evidence alone may not necessarily necessitate a continuance, the combination of the volume of electronic evidence and Defendant's status as a practicing attorney does. Because Defendant is a licensed and practicing attorney, the government must take additional precautions to protect any attorney-client privileged material that may exist within the seized electronic devices. As detailed above, the government has instituted a filter team and filter procedures to ensure that any privileged material is protected. While this filter process is pending, the prosecution team is unable to review the communications and determine what additional investigative steps, if any, are appropriate. In the interest of justice, this Court should grant a continuance so that all pretrial issues are addressed, and that this case is thoroughly prepared for trial.[9]

## II. Tolling the STA Is Consistent with Due Process.

The STA expressly contemplates continuances that will delay the trials of detained defendants. Pursuant to 18 U.S.C. § 3164:

(a) The trial or other disposition of cases involving—

(1) a detained person who is being held in detention solely because he is awaiting trial, and

(2) a released person who is awaiting trial and has been designated by the attorney for the Government as being of high risk, shall be accorded priority.

(b) The trial of any person described in subsection (a)(1) or (a)(2) of this section shall commence not later than ninety days following the beginning of such continuous

---

[9] Although the STA's priority provision is aimed at ensuring that cases in which a defendant is detained will be tried expeditiously, the STA excludes the periods of delay mentioned in § 3161(h) when computing the 90-day time limitation for bringing a detained defendant to trial. *See* 18 U.S.C. § 3164 (b).

> detention or designation of high risk by the attorney for the Government. **The periods of delay enumerated in section 3161(h) are excluded in computing the time limitation specified in this section.**

18 U.S.C. § 3164 (emphasis added). While the STA requires the trial of a detained person to commence within 90 days it also *excludes* from this computation time periods of delay enumerated in § 3161(h). So long as this Court "seriously weigh[s] the benefits of granting the continuance against the strong public and private interests served by speedy trials," *United States v. Bryant*, 523 F.3d 349, 361 (D.C. Cir. 2008), the excluded periods must be omitted from the computation of 90-day time limitation for bringing a detained defendant to trial.

Courts have found that there is no due process violation in tolling the STA for a defendant who has been detained less than one year. *Cf., e.g.*, *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) (explaining that pretrial incarceration is sufficient to trigger constitutional speedy trial inquiry when it "approaches one year").[10] Indeed, the D.C. Circuit has found no Sixth Amendment violation in cases with lengthy periods of pretrial incarceration. *See, e.g., Rice*, 746 F.3d at 1082 (26 months); *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 203 (D.C. Cir. 2013) (three-and-a-half years). Here, Defendant has been detained approximately four months. Tolling the STA in the interests of justice thus would not violate the defendant's due process rights to a speedy trial. Nor would it prejudice his case. Rather, it would ensure he has all available discovery from which to prepare his defense.

Moreover, while the defense opposes this motion, § 3161(h)(7)(A) does not require a defendant's consent for an ends-of-justice continuance, and this Court can and should grant the

---

[10] *See also United States v. El-Gabrowny*, 35 F.3d 63, 65 (2d Cir. 1994) (finding no due process violation where defendant had been detained for 18 months before trial); *United States v. Gamble*, No. 19-348 (CKK), 2020 WL 588323, at *11 (D.D.C. 2020) ("[C]ourts have found that periods ranging from four months to thirty months do not violate due process in light of the circumstances of individual cases.").

15

continuance over a defense objection where, as here, the circumstances clearly warrant it. There is no requirement that a defendant personally consent to an ends-of-justice continuance; the only question is whether the district court has complied with the procedural requirements of §3161(h)(7).[11]

### III. A Trial Date Continuance of up to 70 Days Would Require No STA Findings.

Section 3161(c)(1) provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

Defendant was indicted on December 9, 2023, and had his initial appearance in this district on November 22, 2023. Magistrate Judge Upadhyaya issued an order tolling time under the STA from November 22 to December 1, 2023. And this Court issued an order tolling time under the STA from December 1, 2023, to March 4, 2024. Accordingly, zero days have run on the STA clock, and based on current tolling, Defendant's trial must start no later than May 13, 2024. A continuance of the trial date of up to 70 days therefore requires no STA findings and is within the Court's discretion.

---

[11] District courts routinely grant STA continuances over defense objections. *E.g., United States v. Miller*, No. CR 16-40026-TSH, 2017 WL 11318728, at *2 (D. Mass. June 9, 2017); *United States v. Payne*, No. 2:16-CR-46-GMN-PAL, 2016 WL 7238921, at *3 (D. Nev. Dec. 12, 2016).

**CONCLUSION**

For the foregoing reasons, and any others that may be offered at a hearing on this matter, the government moves this Court to: (1) vacate the trial currently set for March 4, 2024, and continue the trial date; (2) set a status hearing in 30 days to monitor the government's progress in meeting its discovery obligations; and (3) exclude the time within which a trial must commence under the Speedy Trial Act, 18 U.S.C. §§ 3161-3174 on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. §§ 3161(h)(7)(A), (B)(i), (ii), and (iv).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/JOLIE F. ZIMMERMAN*
JOLIE F. ZIMMERMAN
Assistant United States Attorney
D.C. Bar Number 465110
STUART D. ALLEN
Assistant United States Attorney
D.C. Bar No. 1005102; N.Y. Bar No. 4839932
United States Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, DC 20530
(202) 252-7220 (Zimmerman)
(202) 252-7794 (Allen)
Jolie.Zimmerman@usdoj.gov
Stuart.Allen@usdoj.gov