## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**CHRISTOPHER RODRIGUEZ,**<br><br>**Defendant.** | **Criminal Action No. 23-392 (JEB)** |

### MEMORANDUM OPINION AND ORDER

The Government has charged Defendant Christopher Rodriguez with attempting to detonate explosives outside the Embassy of the People's Republic of China here in Washington. Because Rodriguez is a licensed attorney, a filter team has been reviewing, *inter alia*, Defendant's calls to identify and segregate any material that is privileged or potentially privileged. On March 21, 2024, Rodriguez notified the Court that he plans to assert the attorney-client privilege over a set of jail calls between himself and his previous lawyers, as well as between him and his brother, David Killian Rodriguez Encarnacion, who is now a member of his legal team. See ECF No. 33 (Def. Privilege Notice). The filter team contends that Defendant has waived the privilege as to all of these calls, and it further maintains that the privilege does not apply to the subset of calls between him and his brother because the latter was not acting as his attorney at that point. See ECF No. 40 (Filter Team Resp.). The Court agrees that the calls may be released to the prosecution team.

### I.    Legal Standard

"The attorney-client privilege 'is the oldest of the privileges for confidential communications known to the common law.'" United States v. Jicarilla Apache Nation, 564 U.S. 162, 169 (2011) (quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)). As the

Supreme Court explained, "By assuring confidentiality, the privilege encourages clients to make 'full and frank' disclosures to their attorneys, who are then better able to provide candid advice and effective representation," and "[t]his, in turn, serves 'broader public interests in the observance of law and administration of justice.'" Mohawk Indus. v. Carpenter, 558 U.S. 100, 108 (2009) (quoting Upjohn Co., 449 U.S. at 389).  The privilege thus covers a communication "between attorney and client if that communication was made for the purpose of obtaining or providing legal advice to the client."  In re Kellogg Brown & Root, Inc., 756 F.3d 754, 757 (D.C. Cir. 2014) (Kavanaugh, J.); see also In re Lindsey, 158 F.3d 1263, 1270 (D.C. Cir. 1998) ("[Attorney-client] privilege applies only if the person to whom the communication was made is 'a member of the bar of a court' who 'in connection with th[e] communication is acting as a lawyer' and the communication was made 'for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding.'") (quoting In re Sealed Case, 737 F.2d 94, 98–99 (D.C. Cir. 1984)).

The responsibility for protecting the attorney-client privilege lies with the holder: "[T]he confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived.  The courts will grant no greater protection to those who assert the privilege than their own precautions warrant."  In re Grand Jury, 475 F.3d 1299, 1305 (D.C. Cir. 2007) (quoting In re Sealed Case, 877 F.2d 976, 980 (D.C. Cir. 1989)); see also SEC v. Lavin, 111 F.3d 921, 929 (D.C. Cir. 1997) (placing onus on "the holder [to] zealously protect the privileged materials, taking all reasonable steps to prevent their disclosure"); In re Subpoenas Duces Tecum, 738 F.2d 1367, 1369 (D.C. Cir. 1984) ("[V]oluntary disclosure by the holder of such a privilege . . . waives the privilege.").  "Both clients and lawyers can waive the attorney-client privilege . . . by disclosing confidential information to a third-party."  Doe 1 v.

George Washington Univ., 480 F. Supp. 3d 224, 225–26 (D.D.C. 2020) (citing Banneker

Ventures, LLC v. Graham, 253 F. Supp. 3d 64, 71 (D.D.C. 2017), and Convertino v. U.S. Dep't

of Justice, 674 F. Supp. 2d 97, 109 (D.D.C. 2009)).

## II.  Analysis

At the outset, the Court agrees that none of the calls at issue is protected by the privilege

because Rodriguez was aware at the time that his calls from Iberia Parish Jail in Louisiana

(where he was initially held) and the D.C. Central Detention Facility (where he is currently being

held) were being monitored and recorded.  As the filter team highlights in its Response,

Defendant — who is himself a criminal-defense attorney — and the persons he was

communicating with plainly understood that these jail calls were not private.  See, e.g., Filter

Team Resp. at 6 (call between Rodriguez and brother where latter says, "[R]emember this is

recorded"); see also id. (call between Rodriguez and former counsel in Louisiana where latter

says, "I don't want to talk to you over the phone").  This should come as no surprise, since the

calls at both of these facilities began with statements informing inmates like Defendant that these

calls were "subject to monitoring and recording."  Id. at 5.

As many courts of appeals have held, "[W]here an inmate is aware that his or her calls

are being recorded," those calls can no longer be considered confidential and are thus "not

protected by [the] privilege."  United States v. Rehl, No. 21-175-3, ECF No. 731, at 5 (D.D.C.

April 3, 2023) (cleaned up) (quoting United States v. Mejia, 655 F.3d 126, 133 (2d Cir. 2011))

(collecting cases).  Because "[t]he presence of the recording device [is] the functional equivalent

of the presence of a third party," Rodriguez's decision to proceed with these calls amounted to a

waiver of any attorney-client privilege.  United States v. Hatcher, 323 F.3d 666, 674 (8th Cir.

2003).

Defendant does not dispute that he was aware that these calls were monitored.  He instead contends that he had no other means of communicating with his brother because the D.C. jail did not "include [him] on a list of approved legal counsel."  ECF No. 38 (Def. Reply) at 2.  This response thankfully narrows the difference, as Rodriguez all but admits that he had ways of confidentially communicating with counsel other than his brother.  See Gov't Resp. at 7–8 (noting that Defendant "took advantage of" attorney visits and non-recorded phone calls in Louisiana and D.C.).  As to his brother, while the Court recognizes that it would have been a logistical hurdle for him to travel to Louisiana or Washington to speak to Rodriguez, this was an available alternative that would have preserved the privilege.  See United States v. Walia, 2014 WL 3734522, at *16 (E.D.N.Y. 2014) ("Defendant has many secure ways to communicate with counsel, including . . . in person visits, and although they may be burdensome, they do provide [the defendant] with access to his counsel."); cf. United States v. Lentz, 419 F. Supp. 2d 820, 836 (E.D. Va. 2005) (jails are not "constitutionally compelled to provide" inmates "with the most convenient . . . mode of conferring" with counsel).

In any event, any burden Rodriguez suffered on this score is offset by the fact that his brother was not even his attorney until around January 19, 2024 — weeks after the last of the disputed calls, which was made on December 27, 2023 — when this Court granted his motion to appear *pro hac vice*.  See Minute Order of Jan. 19, 2024; In re Lindsey, 158 F.3d at 1270 (privilege only applies if attorney was "acting as a lawyer").  While Defendant's brother is undoubtedly a member of the bar, "consultation with one admitted to the bar but not in that . . . person's role as lawyer is not protected."  In re Lindsey, 158 F.3d at 1270 (citation omitted).  Nothing here suggests that Rodriguez's brother was acting as his lawyer when these calls took place, as both men seemed to acknowledge in their calls during the relevant time period.  See

Filter Team Resp. at 13 (brother relaying to Defendant that "I'm not *pro hac vice* counsel yet, so [document] wouldn't be privileged"); id. at 14 (Dec. 27, 2023, call between Defendant and his legal assistant: "David's going to be on my defense team . . . Once David is officially on the team then I can talk to him without, you know, I can talk to him more directly.") (formatting altered).

It is certainly true that an attorney can be acting as such prior to entering his appearance in a case. See Def. Reply at 2 (making this point). Defendant thus insists that he was communicating with his brother in that interim period "for the purpose of securing legal advice." Id. (quoting In re Lindsey, 148 F.3d at 1103). The excerpts cited above and the subject matter of many of the remaining calls, however, belie this unsupported assertion. See Filter Team Resp. at 14–15 (Rodriguez brothers discussed, among other things, "how their mother is doing," "[p]aying the mortgage and utility bills for a house Defendant owns," and "[a] family friend whose boyfriend died"). At the end of the day, it is Defendant, not the filter team, who "bears the burden of proving that" his calls were protected by the attorney-client privilege. In re Lindsey, 158 F.3d at 1270. In the face of these indications to the contrary, Rodriguez's recitation of the applicable legal standard will not do.

For the foregoing reasons, the Court agrees with the filter team that these jail calls are not privileged and accordingly ORDERS that it may disclose them to the prosecution team.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: April 8, 2024