# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Criminal No. 23-CR-392 (JEB)** |
| | : | |
| CHRISTOPHER RODRIGUEZ, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. Defendant has pled guilty to Counts One, Two, and Three of the Second Superseding Information. Counts One and Two charged the defendant with, respectively, Damaging Property Occupied by Foreign Government, in violation of 18 U.S.C. § 970(a) and Explosive Materials—Malicious Damage to Federal Property, in violation of 18 U.S.C. § 844(f), in connection with his actions in the District of Columbia on September 25, 2023. Count Three charged the defendant with Receipt or Possession of Unregistered Firearm (Destructive Device), in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871, in connection with his actions in San Antonio, Texas, on November 22, 2022. For the reasons set forth below, the government submits that the sentence agreed to in the plea agreement between the parties in this case, filed on August 2, 2024 (ECF No. 55), is an appropriate sentence. Accordingly, we request that the Court accept the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and sentence Defendant to a sentence within the agreed-upon range.

As detailed below, the government recommends a sentence of 10 years' imprisonment. Such a sentence would be "'sufficient, but not greater than necessary, to comply with' the purposes

of federal sentencing, in light of the Guidelines and other § 3553(a) factors." *Freeman v. United States*, 564 U.S. 522, 529 (2011) (citing 18 U.S.C. § 3553(a)).

## PROCEDURAL HISTORY

Defendant was arrested on November 4, 2023, and has been detained since his arrest. On November 9, 2023, Defendant was indicted for violations of 18 U.S.C. § 970(a) (Damaging Property Occupied by Foreign Government); 18 U.S.C. § 844(h) (Explosive Materials—Commission of a Federal Felony); 18 U.S.C. § 844(i) (Explosive Materials—Malicious Use); and 26 U.S.C. §§ 5841, 5861(d), and 5871 (Receipt or Possession of Unregistered Firearm). On March 26, 2024, the Grand Jury returned a First Superseding Indictment that included the four original charges (with some amendments/clarifications) and added a fifth count charging Defendant with violations of 18 U.S.C. § 844(f) (Explosive Materials—Malicious Damage to Federal Property) related to his attempt to detonate explosives outside the Chinese Embassy.

Thereafter, evidence emerged that the defendant had also detonated an explosive device at the base of a sculpture in San Antonio, Texas, on November 22, 2022. On August 2, 2024, Defendant resolved both matters when he entered a plea of guilty to the Second Superseding Information, described above, which was signed by the undersigned Assistant United States Attorneys from the District of Columbia, and an Assistant United States Attorney from the Western District of Texas. Defendant's sentencing hearing is scheduled for January 31, 2025.

## FACTUAL SUMMARY

### Overview

Defendant is licensed attorney who has practiced as a criminal defense attorney in Panama City and Pensacola, Florida. On November 7, 2022, and on September 25, 2023, Defendant used explosive devices to commit the crimes described below. Neither explosive device was registered

to Defendant in the National Firearms Registration and Transfer Record. Defendant acted willfully and knowingly in committing the offenses described below. ECF No. 56 at 1.

### Bombing of Miss Mao *Sculpture in San Antonio, Texas, on November 7, 2022*

The courtyard of the Texas Public Radio building, located at 321 West Commerce Street, San Antonio, Texas, contains a sculpture titled *Miss Mao Trying to Poise Herself at the Top of Lenin's Head*. The sculpture (*Miss Mao*) depicts communist leaders Vladimir Lenin and Mao Zedong. *Id*. at 2. Lenin was the founder and first head of government of Soviet Russia and of the Soviet Union. Mao founded the People's Republic of China and served as the Chairman of the Chinese Communist Party.

On November 5, 2022, Defendant rented a vehicle in Pensacola, Florida. He drove that rental vehicle to San Antonio, Texas, on November 5-6, 2022. *Id*.

In the early morning hours of November 7, 2022, Defendant placed and detonated an explosive device at the base of *Miss Mao* that caused significant damage valued at least at $325,000 to the steel sculpture. ECF No. 61 at ¶¶ 28 & 31. At approximately 2:25 a.m. on November 7, 2022, Defendant, wearing a black baseball hat, black mask, black pants, brown work style boots, and a neon green/yellow long sleeve high visibility shirt, scaled an 8-foot fence to enter the courtyard where *Miss Mao* was located. He then walked to the sculpture and placed two canisters at the base of the sculpture. The canisters contained some quantity of exploding target explosive material. Defendant then left the courtyard by climbing back over the fence. Once on the opposite side of the fence from the courtyard, he climbed onto a small rooftop that overlooked the courtyard. At approximately 2:31 a.m., Defendant used a rifle to shoot at the canisters at the base of the statue, causing the canisters and their contents to explode. Moments later, Defendant climbed down from the rooftop with a rifle in his hand and left the area. ECF No. 56 at 2.

3

*Attempted Bombing Outside Chinese Embassy on September 25, 2023*

On September 25, 2023, Defendant attempted to detonate an explosive device outside the Chinese Embassy. While Defendant has not spoken to the Probation Officer or to law enforcement officials about the reasons for his crimes, a review of his seized electronic devices offers a possible window into his motivation. In the month leading up to the attempted attack outside the Chinese Embassy, Defendant accessed numerous videos that appear to portray the Chinese government in a negative light. The list below includes, for each video, the date and time of Defendant's most recent access of the file and the title of the file. The information in the table is derived from a forensic review of Defendant's electronic devices conducted by the filter team. *See* Ex. 1 (shared with the defense via the filter team on March 1, 2024).

| | |
|---|---|
| 8/26/2023 7:04:41 AM | "TERMINATOR 2 JUDGMENT DAY REMASTERED SARAH CONNOR DREAM OF APOLCALYPSE NUCLEAR BOMB DESTROYS WORLD.mp4" |
| 8/26/2023 7:04:50 AM | "U.S. Starts Investigation into Organ Harvesting in China Epoch News.mp4" |
| 8/26/2023 7:17:41 AM | "President Obama's Bilateral Meeting with Vice President Xi of China.mp4" |
| 8/26/2023 7:17:43 AM | "China 'Kills Prisoners and Harvests Their Organs' CRIMINAL PLANET.mp4" |
| 8/26/2023 7:17:43 AM | "Chinese Hell March (70th Anniversary of Founding Parade).mp4" |
| 8/26/2023 7:17:55 AM | "Biden Unveils $1.9 Trillion COVID-19 Relief Plan.mkv" |
| 8/26/2023 7:17:55 AM | "France and China reassert mutual support for the 'irreversible' Paris climate agreement.mp4" |
| 8/26/2023 7:17:55 AM | "China flies planes into Taiwan airspace after Biden takes office, Ratcliffe reacts.mp4" |
| 8/26/2023 8:18:37 AM | "Chinawood 3.0.mp4" |
| 9/22/2023 7:17:27 PM | "Chinawood.mp4" |
| 9/23/2023 3:43:03 AM | "Activists detained at an unknown location Detained for sharing COVID-19 information.mp4" |
| 9/23/2023 3:43:24 AM | "Americans no longer trust China Peter Navarro.mp4" |
| 9/23/2023 3:43:32 AM | "Be Careful On Zoom, They May Be Spying On You For China, Tucker Carlson & Michael Pillsbury Explain.mp4" |
| 9/23/2023 3:43:44 AM | "Bill Gates on covid pandemic conspiracies. Calls for examination of social media use and impact..mp4" |

| 9/23/2023 3:43:48 AM | "China and EU strengthen commitment to Paris climate accord.mp4" |
| 9/23/2023 3:43:49 AM | "China issues menacing warning to NZ and others 'Be careful not to get their eyes poked out'.mp4" |
| 9/23/2023 3:43:50 AM | "China's Vanishing Muslims Undercover In The Most Dystopian Place In The World (2).mp4" |
| 9/23/2023 3:43:50 AM | "China Warns Australia, US & UK 10 News First.mp4" |
| 9/23/2023 3:43:44 AM | "Biden Unveils $1.9 Trillion COVID-19 Relief Plan.mkv" |
| 9/23/2023 3:43:49 AM | "China Spies on Americans through Caribbean Phone Networks Epoch News China Insider.mp4" |
| 9/23/2023 3:43:51 AM | China's Vanishing Muslims Undercover In The Most Dystopian Place In The World.mp4" |
| 9/23/2023 3:43:55 AM | "Chinatown (1974) Trailer #1 Movieclips Classic Trailers.mp4" |
| 9/23/2023 3:43:56 AM | "Chinese Illuminati How 2 Mn Cadres from Communist Party of China Infiltrated Various Global Orgs..mp4" |
| 9/23/2023 3:43:55 AM | "China's Xi Orders Military to Prepare for War 'At Any Time' Epoch News China Insider.mp4" |
| 9/23/2023 3:43:56 AM | "Chinese censorship is no longer just a China problem (2).mp4" |
| 9/23/2023 3:44:09 AM | The Point China's role in achieving UN's 2030 goals (2).mp4" |
| 9/23/2023 3:44:20 AM | "Tucker Carlson - Dr. Li-Meng Yan Her Research Contains Evidence The Virus Came From A Lab - 10-6-20.mp4" |
| 9/23/2023 3:44:25 AM | "U.S. Starts Investigation into Organ Harvesting in China Epoch News.mkv" |
| 9/23/2023 3:44:26 AM | "U.S. Starts Investigation into Organ Harvesting in China Epoch News.mp4" |
| 9/23/2023 3:44:28 AM | "USA PRESIDENT CLINTON TO EXTEND SPECIAL TRADE STATUS FOR CHINA (2).mp4" |
| 9/23/2023 3:50:40 AM | "The Siege (1 3) Movie CLIP - Bus Bombing (1998) HD.mp4" |

As shown in the table above, Defendant accessed nine of the files between 7:00 a.m. and 8:20 a.m. on August 26, 2023, about a month before his crimes outside the Chinese Embassy. He accessed one of the files around 7:17 p.m. on September 22, 2023, and 21 of the video files between 3:40 a.m. and 3:50 a.m. on September 23, 2023. Defendant appears to have been strengthening his resolve by viewing these videos on that date—the same date he left his residence in Panama City, Florida, and started driving north towards Washington, D.C. ECF No. 56 at 2.

En route, Defendant purchased a quantity of Tannerite binary explosives and other items he needed to facilitate his crime and cover his tracks. Tannerite is a brand of exploding targets.

Exploding targets can be detonated via a high velocity impact from a projectile such as a bullet. ECF No. 56 at 1. On September 23, 2022, at about 7:15 p.m., Defendant purchased two half-pound containers of Tannerite from a store in Buford, Georgia, about 340 miles from Panama City. Ex. 2 [USAO_019072]. On September 24, 2023, Defendant visited two separate Walmart stores in Harrisonburg and Charlottesville, Virginia, and made cash purchases of various items used in the attempted attack on the Chinese Embassy—including the black backpack, nitrile gloves, tape to use as a target, and a "burner" phone. *See* ECF No. 56 at 2-3.

During the evening of September 24, 2023, Defendant parked his car outside the District of Columbia in Arlington, Virginia. Defendant used the "burner" cellular telephone purchased on his way to D.C. to arrange for a taxicab ride to a location a few blocks from the Embassy of the People's Republic of China (Chinese Embassy) in Washington, D.C., between approximately 1:30 a.m. and 1:55 a.m. *Id*. at 3.

On September 25, 2023, sometime between approximately 2:15 a.m. and 2:35 a.m., Defendant attempted to damage the wall and fence surrounding the Chinese Embassy grounds, which are property belonging to the government of the People's Republic of China. Defendant placed a black backpack containing about 15 pounds of a binary explosive consisting of ammonium nitrate and aluminum powder next to a streetlight owned or possessed by the U.S. Department of State and approximately 12 feet from the back wall and fence surrounding the Embassy grounds. *Id*. at 3. The wall, fence, and Embassy grounds (which include the Embassy Chancery) belong to, are utilized by, and are occupied by the Chinese government. Defendant then attempted to detonate the explosives contained within the backpack by shooting at the backpack with a rifle. Defendant missed his target, and the device did not detonate. *Id*.

The bomb that Defendant attempted to detonate could have caused serious damage to persons and property nearby. The government's destructive device expert, Michael Eldredge, a Senior Explosives Enforcement Officer at the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), opined that, had the device exploded, the explosion would have produced blast, thermal, and fragmentation effects capable of causing injury and/or death to nearby persons and damage to nearby property. Specifically, Officer Eldredge concluded that the device was placed in a location that would have caused damage to property and persons up to approximately 1,200 feet from the blast. Ex. 3 [USAO_023018] at 3.

Defendant can be seen leaving the area carrying a bag consistent in shape with a rifle bag and a messenger bag in the photo shown below (at approximately 2:38 a.m.).



Defendant was arrested in Lafayette, Louisiana, on November 4, 2023. A search of Defendant's Jeep Patriot uncovered approximately $2,300 in cash; a U.S. passport in Defendant's name; nitrile gloves, masks, and clothes consistent with those worn in surveillance camera footage (including a neon yellow long-sleeved shirt and a canvass messenger bag); and duffle bags containing clothing. Ex. 4 [Sensitive_006432].[1] The vehicle search also revealed a document addressed to Defendant with the phone number [XXX-XXX]-1785 written on it. This number is associated with the "burner" phone purchased from the Charlottesville Walmart. Also written on this document was the e-mail address used in connection with the first "burner" phone that was purchased and returned. The address "4500 Connecticut Ave NW DC 20008" was also written on the same document; this is the same address shown in the receipts from the taxicab company discussed above. Ex. 5 [USAO_018628].

## Background on Defendant

Defendant was born in Puerto Rico in 1978. ECF No. 61 at ¶ 79. He enlisted in the U.S. Army in 2002 and served until 2009. *Id*. at ¶ 84. After Defendant left the Army, he went back to school and obtained a law degree. *Id*. at ¶¶ 94 & 99. At the time of his arrest in this case, Defendant was a licensed attorney practicing criminal defense law. *Id*. at ¶¶ 95 & 96.

Despite this military training, legal education, and professional experience, Defendant chose to begin experimenting with explosives in or around early 2021. On June 27, 2021, Defendant was arrested in Los Angeles County, California, by California Highway Patrol. Defendant was in a Jeep Patriot, with plates that did not match the vehicle. *Id*. at ¶ 72. Law enforcement officers approached the vehicle and observed a firearm on the center console.

---

[1] The government is filing this exhibit under seal pursuant to the Protective Order issued in this case (ECF 12).

Defendant was in the back seat sleeping. Law enforcement recovered two additional firearms (one of which he admitted to) and charged Defendant with possession of loaded/concealed firearm in a vehicle, possession of an unregistered firearm, and possession of a switchblade knife. *Id*.

California Highway Patrol later obtained a search warrant for the vehicle. During the search of the vehicle, law enforcement located several bags and jars labeled Tannerite, which is consistent with the substance recovered from the backpack found outside the Chinese Embassy discussed above. *See* Exs. 6 [USAO_022700] & 7 [Supplemental Expert Disclosure]. Some photos of the items found in Defendant's vehicle are included below:

 



## SENTENCING RECOMMENDATION AND ANALYSIS

As discussed below, the Sentencing Guidelines should be the starting point for determining a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). In this case, before any

applicable departures (discussed below), the applicable Guideline range for Counts One and Three is 46-57 months' imprisonment, and the applicable Guideline range for Count Two is 60 months' imprisonment. ECF No. 55 at 5.[2] With the recommended departures, the applicable Guidelines range for all counts is 108 to 135 months in prison. The government recommends that the Court sentence Defendant to 10 years' imprisonment, which is within the range provided in the plea agreement and this Sentencing Guideline range.

As explained below, this case presents certain unique factors that warrant an upward departure or variance.[3] First, pursuant to U.S.S.G. § 3A1.4, an upward departure is warranted since "the offense was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." Second, U.S.S.G. § 4A1.3 justifies an upward departure based on inadequacy of criminal history category. Third, an upward departure is warranted pursuant to U.S.S.G. § 5K2.5 because "the offense caused property damage or loss not taken into account within the guidelines," that is, the damage to the *Miss Mao* sculpture. Lastly, pursuant to U.S.S.G. § 5K2.6, an upward departure is warranted because "a weapon or dangerous instrumentality was used or possessed in the commission of the offense."

---

[2] As discussed below, this range is two levels higher than the range listed in the plea agreement. The Probation Officer calculated the Guideline range to be 51 to 60 months on Count One, 60-63 months on Count Two, and 51 to 63 months on Count Three. ECF No. 61 at ¶¶ 118-119. The differences in the two calculations are discussed below.

[3] "Judges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings, including state proceedings." *United States v.* Ayers, 795 F.3d 168, 172 (D.C. Cir. 2015) (citing *Setser v. United States*, 566 U.S. 231, 236 (2012). This discretion is guided by 18 U.S.C. § 3584(b), which provides that "[t]he court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." *Id.*

**<u>Legal Standards</u>**

"Federal sentencing law requires the district judge in every case to impose 'a sentence sufficient, but not greater than necessary, to comply with' the purposes of federal sentencing, in light of the Guidelines and other § 3553(a) factors." *Freeman v. United States*, 564 U.S. 522, 529 (2011) (citing 18 U.S.C. § 3553(a)). "Rule 11(c)(1)(C) permits the defendant and the prosecutor to agree that a specific sentence is appropriate, but that agreement does not discharge the district court's independent obligation to exercise its discretion." *Freeman*, 564 U.S. at 529.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court ruled that the Guidelines are no longer mandatory. However, the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and "should be the starting point and the initial benchmark" in determining a defendant's sentence. *United States v. Gall*, 552 U.S. 38, 46, 49 (2007). Accordingly, this Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." 552 U.S. at 49.

In *Freeman*, a plurality of the Supreme Court discussed the interplay between a court's acceptance of a plea under Rule 11(c)(1)(C) and the Guidelines:

> Rule 11(c)(1)(C) makes the parties' recommended sentence binding on the court "once the court accepts the plea agreement," but the governing policy statement confirms that the court's acceptance is itself based on the Guidelines. *See* USSG § 6B1.2. That policy statement forbids the district judge to accept an 11(c)(1)(C) agreement without first evaluating the recommended sentence in light of the defendant's applicable sentencing range. The commentary to § 6B1.2 advises that a court may accept an 11(c)(1)(C) agreement "only if the court is satisfied either that such sentence is an appropriate sentence within the applicable guideline range or, if not, that the sentence departs from the applicable guideline range for justifiable reasons." *Cf. Stinson v. United States*, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (Guidelines commentary is authoritative). Any bargain between the parties is

> contingent until the court accepts the agreement. The Guidelines require the district judge to give due consideration to the relevant sentencing range, even if the defendant and prosecutor recommend a specific sentence as a condition of the guilty plea.

564 U.S. at 529-30. Accordingly, in this case, the Court should first evaluate the recommended sentence considering Defendant's applicable Guideline range. Since the recommended sentence is a departure from the applicable Guideline range, the Court next should determine whether that departure is justified, in the context of its analysis of the factors set forth in 18 U.S.C. § 3553(a). The Guidelines similarly provide that a court may accept a Rule 11(c)(1)(C) agreement "if the court is satisfied either that: (1) the agreed sentence is within the applicable guideline range; or (2) (A) the agreed sentence is outside the applicable guideline range for justifiable reasons; and (B) those reasons are set forth with specificity in the statement of reasons form." U.S.S.G. § 6B1.2(c).

Next, the Court should consider all the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* at 49-50. In "the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)). The § 3553(a) factors include, *inter alia*: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant; (4) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (5) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1)-(7).

## Statutory Maximums and Mandatory Minimums

**Count One:** A violation of Damaging Property Occupied by Foreign Government, in violation of 18 U.S.C. § 970(a), carries a maximum sentence of 5 years of imprisonment; a fine of $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. § 3571(b)(3); a term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583(b)(2); mandatory restitution under 18 U.S.C. § 3663A; and an obligation to pay any applicable interest or penalties on fines and restitution not timely made. ECF No. 61 at ¶¶ 115, 129, 144 & 149; ECF No. 55 at 2.

**Count Two:** A violation of Explosive Materials—Malicious Damage to Federal Property, in violation of 18 U.S.C. § 844(f), carries a mandatory minimum sentence of five years of imprisonment and a maximum term of 20 years of imprisonment; a fine of $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. § 3571(b)(3); a term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583(b)(2); mandatory restitution under 18 U.S.C. § 3663A; and an obligation to pay any applicable interest or penalties on fines and restitution not timely made. ECF No. 61 at ¶¶ 116, 129, 144 & 149; ECF No. 55 at 2.

**Count Three:** A violation of Receipt or Possession of Unregistered Firearm, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871, carries a maximum sentence of 10 years of imprisonment; a fine of $10,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. § 3571(b)(3); a term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583(b)(2); and an obligation to pay any applicable interest or penalties on fines and restitution not timely made. ECF No. 61 at ¶¶ 117, 129 & 145; ECF No. 55 at 2.

## Sentencing Guidelines Calculation

Pursuant to the plea agreement, the applicable Guideline range for Defendant is 37 to 46 months in prison, based on a total offense level of 21 and a Criminal History Category of I. ECF

No. 55 at 5; ECF No. 61 at ¶ 19. This final range differs from that of Probation, which determined that Defendant's applicable Guideline range is 51 to 60 months on Count One and 60 to 63 months on Count Two. ECF No. 61 at ¶¶ 118 & 119. Although not specifically listed in the PSR, the applicable range for Count Three presumably is 51 to 63 months. *See id*. at ¶¶ 70 & 73. The calculations in the plea agreement differ in two ways.

First, the Probation Officer determined that the base offense level for Count One is 16, ECF No. 61 at ¶ 43, whereas the level in the plea agreement is 10. ECF No. 55 at 4. The government agrees with Probation that the base offense level (and adjusted offense level) for Count One is 16. Second, the Probation Officer determined that a multiple count adjustment applies, increasing the adjusted offense level from 24 to 27, whereas the plea agreement does not include a multiple count adjustment.

The guidelines for Count One are U.S.S.G. §§ 2B1.1 and 2K1.4. The guideline for Count Three is U.S.S.G. § 2K2.1. Pursuant to U.S.S.G. § 3D1.2(d), offenses covered by §§ 2B1.1 and 2K2.1 may be grouped as closely related counts. Count Two should not be grouped, however. If the Court were to group Counts One and Three but not Count Two, there would be an increase in offense level of two pursuant to U.S.S.G. § 3D1.4. The resulting Guideline range for all counts would be 46 to 57 months in prison.[4]

Moreover, as explained below, four upward departures are warranted in this case. Upward departures are warranted under U.S.S.G. §§ 3A1.4 (Terrorism), 4A1.3 (Departures Based on Inadequacy of Criminal History Category (Policy Statement), 5K2.5 (Property Damage or Loss (Policy Statement)), and 5K2.6 (Weapons and Dangerous Instrumentalities (Policy Statement)),

---

[4] Alternatively, the Court could sentence the defendant consecutively on Counts One and Three based on the conclusion that these counts represent separate and distinct criminal actions that occurred nearly one year and 1,600 miles apart.

each of which is discussed below. As noted above, if the Court were to apply each of these departures, the resulting range would be 108 to 135 months if the Court were to group only Counts One and Three.

### *Upward Departure Pursuant to U.S.S.G. § 3A1.4 (Terrorism)*

Section 3A1.4(a) provides for a 12-level adjustment "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism." U.S.S.G. § 3A1.4(a). In such cases, the defendant's criminal history category is Category VI. U.S.S.G. § 3A1.4(b). Section 3A1.4, Application Note 4, provides as follows:

> By the terms of the directive to the Commission in section 730 of the Antiterrorism and Effective Death Penalty Act of 1996, the adjustment provided by this guideline applies only to federal crimes of terrorism. However, there may be cases in which (A) the offense was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct but the offense involved, or was intended to promote, an offense other than one of the offenses specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B). … In such cases an upward departure would be warranted, except that the sentence resulting from such a departure may not exceed the top of the guideline range that would have resulted if the adjustment under this guideline had been applied.[5]

U.S.S.G. § 3A1.4, App. Note 4.

As several appellate courts have held, "'calculated' means that [the defendant] had to specifically intend one of those results." *United States v. Alowemer*, 96 F.4th 386, 389 (3rd Cir. 2024). (citing *United States v. Wright*, 747 F.3d 399, 408 (6th Cir. 2014) (collecting cases from the Second, Fourth, and Seventh Circuits)). In *Alowemer*, the defendant admitted that he had "he sought to avenge his ISIS brothers who had been killed in Nigeria while fighting against the

---

[5] The top of the Guideline range if U.S.S.G. § 3A1.4 were applied would be 168 months (based on an offense level of 33 and a CHC of I). Here, the government is recommending a sentence of 120 months.

government" and discussed seeking revenge for U.S. military actions. 96 F.4th at 389. The Third Circuit held this motivation sufficient to trigger the 3A1.4 enhancement. *Id*.

Courts have held that "government" includes a foreign government (which is also consistent with the code definition). *See, e.g., United States v. Khan*, 938 F.3d 713, 718 (5th Cir. 2019) (citing *United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011)); *United States v. Assi*, 428 Fed.Appx. 570, 574 (6th Cir. 2011) ("As a preliminary matter, a review of pertinent case law shows that the term 'government' in 18 U.S.C. § 2332b(g)(5) includes foreign governments and therefore is not limited to acts against the United States."). In *Khan*, the Fifth Circuit noted its prior holding that 18 U.S.C. § 2332b(g)(5) "refers broadly to 'government,'" foreign or otherwise." 938 F.3d at 718 (citations omitted).

Here, none of the offenses of conviction involved or were intended to promote a federal crime of terrorism (that is, an offense specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B)). At the same time, Defendant's convictions for Counts One and Two were calculated to influence or affect the conduct of government by intimidation or coercion or to retaliate against government conduct and thus warrant an upward departure. By placing a backpack filled with explosives outside the wall and fence of the Chinese Embassy and attempting to detonate them, Defendant intended to affect the conduct of the Chinese government by intimidation or coercion and/or to retaliate against Chinese government conduct. *See* U.S.S.G. § 3A1.4, App. Note 4.

Though Defendant has yet to provide his motivation or intent for this crime in his own words, the circumstances surrounding this offense support a preponderance of the evidence finding of such an intent. For example, we know that Defendant was obsessed with the government of China, as shown by the numerous videos he accessed in the days and weeks leading up to the attempted attack. Defendant's obsession with the Chinese government is also shown by his attack

on the *Miss Mao* sculpture nearly a year before the Embassy incident. And the Court may draw an inference from the nature of the offense itself. *See United States v. Harris*, 434 F.3d 767, 774 (5th Cir. 2005) (circumstance of offense sufficient to support finding of retaliatory motive).

An upward departure of four levels is warranted as to Counts One and Two under U.S.S.G. § 3A1.4.

### Upward Departure Pursuant to U.S.S.G. § 4A1.3 (Departures Based on Inadequacy of Criminal History Category (Policy Statement)

Section 4A1.3(a)(1) provides the standard for an upward departure based on inadequate criminal history: "If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." U.S.S.G. § 4A1.3(a)(1). Defendant was arrested in Los Angeles, California, on June 27, 2021, and was found in possession of three loaded/concealed firearms. He was also in possession of multiple bags and jars labeled Tannerite. Yet Defendant was permitted to enter a plea of guilty to a misdemeanor. In the context of this case, where Defendant has entered pleas of guilty to using Tannerite to target the *Miss Mao* statute in and the Chinese embassy, his criminal history under-represents the seriousness of his criminal conduct.

"A departure under § 4A1.3 is warranted when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes. *United States v. Menn*, 58 F.3d 635, *1 (5th Cir. 1995) (citing U.S.S.G § 4A1.3, p.s.). In *Menn*, the Fifth Circuit reasoned, "Repeated acts of similar criminal activity are an acceptable basis for departure because they may indicate the defendant's lack of recognition of the gravity of the original wrong." 58 F. 3d at *1 (citing *United States v. Medina-Gutierrez*, 980 F.2d 980, 984 (5th Cir.1992)). The court further held, "The inadequacy of

a defendant's criminal history category is an acceptable basis for departure." 58 F. 3d at *1. An upward departure based on a prior lenient sentence also is appropriate. *See United States v. Jackson*, No. 93-3743, 29 F.3d 624, *2 (5th Cir. 1994) (citation omitted).

Defendant received a sentence of probation, along with a suspended sentence that included eight days in jail (actual four days in custody and four days of good time/work time) for his California convictions. ECF No. 61 at ¶ 72. This sentence was overly lenient given that Defendant had three firearms (two of which were loaded), multiple rounds of ammunition, and 30 pounds of Tannerite in his vehicle, which was bearing false plates and given that Defendant provided false and misleading information to the police.

Under § 4A1.3(a)(2)(E), "prior similar adult criminal conduct not resulting in a criminal conviction" may warrant an upward departure. U.S.S.G. § 4A1.3(a)(2)(E). Defendant's possession of 30 pounds of explosive material (mixed Tannerite) in California did not result in a conviction and likely was chargeable under 18 U.S.C. § 842(j) (improper storage of explosive material). That Defendant received a criminal history point for his California State conviction does not prevent the Court from using that offense to justify an upward departure under U.S.S.G. § 4A1.3. *See United States v. Garcia*, 289 Fed. App'x. 14, 15 (5th Cir. 2008) (finding that "Garcia's recidivism and dangerousness [were] independent factors warranting an upward departure").

Had Defendant been charged and convicted for violating 18 U.S.C. § 842(j), he would have received at least one additional criminal history point pursuant to U.S.S.G. § 4A1.1(c). *See United States v. Crumpler*, 536 F.2d 1063, 1064 (5th Cir. 1976) (defendant received one-year sentence for unlawful storing of explosive materials in violation of 18 U.S.C. § 842(j)). An upward departure to Criminal History Category II is warranted under U.S.S.G. § 4A1.3.

### *Upward Departure Pursuant to U.S.S.G. § 5K2.5 (Property Damage or Loss (Policy Statement))*

Section 5K2.5 provides:

> If the offense caused property damage or loss not taken into account within the guidelines, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the extent to which the harm was intended or knowingly risked and on the extent to which the harm to property is more serious than other harm caused or risked by the conduct relevant to the offense of conviction.

U.S.S.G. § 5K2.5.

The offenses here caused property damage and losses not considered within the Guidelines. Defendant's conduct resulting in his conviction for Count Three caused damages of at least $325,000 to the *Miss Mao* sculpture. That loss is not accounted for in the Guidelines because the applicable Guideline (U.S.S.G. § 2K2.1) does not contain a specific offense characteristic based on loss amount. Were the specific offense characteristic based on loss amount from U.S.S.G. § 2B1.1 to apply here, a 12-level increase in offense level would result. *See* U.S.S.G. § 2B1.1(b)(1)(G).

An upward departure of four levels is warranted as to Count Three under U.S.S.G. § 5K2.5.

### *Upward Departure Pursuant to U.S.S.G. § 5K2.6 (Weapons and Dangerous Instrumentalities (Policy Statement))*

Section 5K2.6 provides:

> If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others. The discharge of a firearm might warrant a substantial sentence increase.

U.S.S.G. § 5K2.6.

In San Antonio on November 7, 2022, and again in Washington, D.C., on October 25, 2023, Defendant created a substantial risk of harm by firing at containers filled with explosives that is separate from the harm that could be caused by the explosion itself. This risk is not accounted for in the guidelines or in his charges. *See United States v. Shaffer*, 16 F. 3d 413, *2 (4th Cir. 1994) ("Guideline section 5K2.6 authorizes an upward departure when a weapon was used or possessed in the commission of the offense, and suggests that the discharge of a weapon might warrant a substantial increase.").

In *Shaffer*, the defendant pled guilty to possessing a sawed-off shotgun, in violation of 26 U.S.C. §§ 5861(d), 5871. As part of the offense conduct, the defendant fired a shotgun during an argument with his wife and in the presence of her and at least one of their children. *Id*. at *1. The district court found that Shaffer did not intend to harm his wife or the children but nevertheless had fired the shotgun in the presence of them "while angry and drunk 'in order to get her [(the wife's)] attention and express his displeasure in a meaningful way.' It found that this conduct warranted a two-level departure." *Id*. The Fourth Circuit upheld the district judge's two-level increase in offense level based on U.S.S.G. § 5K2.6. *Id*. at *1, *3. The Court reasoned, "Shaffer discharged his shotgun. This kind of use went beyond the illegal possession which was the basis of his conviction. Application Note 18 [of U.S.S.G. § 2K2.1][6] provides support for the propriety of a departure in these circumstances." *Id*. at *3.

_____

[6] The 1994 version of the Guidelines contained an Application Note 18, which read,

> As used in subsections (b)(5) and (c)(1), "another felony offense" and "another offense" refer to offenses other than explosives or firearms possession or trafficking offenses. However, where the defendant used or possessed a firearm or explosive to facilitate another firearms or explosives offense (e.g., the defendant used or possessed a firearm to protect the delivery of an unlawful shipment of explosives), an upward departure under 5K2.6 (Weapons and

Here, given Defendant intended to create an explosion when he shot at the canisters in San Antonio and at the explosives-filled backpack in Washington, D.C., an upward departure of three levels is warranted as to each count under U.S.S.G. § 5K2.6.

### Summary of Guidelines Calculations

The table below shows the government's Guideline calculations consistent with the above discussion and analysis.

| | | | |
|---|---|---|---|
| **Count One** | Base Offense Level | § 2B1.1(b)(16)(B) | 14 |
| | Specific Offense Characteristics | § 2K1.4(a)(4) | +2 |
| | Upward Departures | § 3A1.4 | +4 |
| | | § 5K2.6 | +3 |
| | Adjusted Offense Level | | 23 |
| | | | |
| **Count Two** | Base Offense Level | § 2K1.4(a)(2)(B) | 20 |
| | Upward Departures | § 3A1.4 | +4 |
| | | § 5K2.6 | +3 |
| | Adjusted Offense Level | | 27 |
| | | | |
| **Count Three** | Base Offense Level | § 2K2.1(a)(5) | 18 |
| | Specific Offense Characteristics | § 2K2.1(b)(3)(B) | +2 |
| | | § 2K2.1(b)(6)(B) | +4 |
| | Upward Departures | § 5K2.5 | +4 |
| | | § 5K2.6 | +3 |
| | Adjusted Offense Level | | 31 |
| | | | |
| | Greater of Adjusted Offense Levels | | 31 |
| | Grouping | § 3D1.4 | +2 |
| | Acceptance of Responsibility | § 3E1.1(a), (b) | -3 |
| | Total Adjusted Offense Level | | 30 |
| Upward Departure for CHC | § 4A1.3 (CHC II) | Guideline Range | 108 to 135 months |

---

Dangerous Instrumentalities) may be warranted.

### *Guidelines for Supervised Release and a Fine*

The government agrees with the Probation Officer that the guideline range for a term of supervised release is 1 year to 3 years for each count. ECF No. 61 at ¶¶ 131 & 132. The government further agrees with the Probation Officer that the fine Guideline range for Defendant is $20,000 to $200,000. *Id*. at ¶ 147.

## Analysis of Factors Enunciated in 18 U.S.C. § 3553(a)

As discussed below, an analysis of the factors provided in 18 U.S.C. § 3553(a) shows that a sentence of 10 years in prison is an appropriate sentence in this case.

### *The Nature and Circumstances of the Offense*

The nature and the circumstances of the offenses are undoubtedly serious: Defendant detonated a bomb at the foot of the *Miss Mao* sculpture in San Antonio and attempted to detonate a bomb outside the Chinese Embassy. In both instances, Defendant used a firearm to shoot at his target, injecting an additional level of risk beyond that of the explosion itself. Although Defendant chose the early morning hours of a Sunday each time, neither area was deserted at the time of Defendant's attack. In each instance, Defendant took steps to hide his criminal activity, such as renting a vehicle (San Antonio), parking a safe distance away (San Antonio), wearing a mask (both), using cash to purchase the materials used in the attack (Washington, D.C.), buying the items at multiple locations (Washington, D.C.), using a burner phone and a false name (Washington, D.C.), covering his license plate (Washington, D.C.), and arranging a taxi ride, with the burner phone, to and from a nearby location (Washington, D.C.).

The San Antonio bombing caused at least $325,000 worth of damages to the steel sculpture. Regarding the attack near the Chinese Embassy, the government's destructive device expert, Michael Eldredge, opined that, had the device exploded, the explosion would have produced blast, thermal, and fragmentation effects capable of causing injury and/or death to nearby persons and

damage to nearby property. Specifically, Officer Eldredge concluded that the device was placed in a location that would have caused damage to property and persons up to approximately 1,200 feet from the blast.

### The History and Characteristics of the Defendant

Defendant was born in Puerto Rico in 1978. He served in the U.S. Army for seven years and then went to law school and began a career as a criminal defense attorney. Defendant was so employed during the relevant time. At some point before his June 2021 arrest in California, Defendant appears to have developed a dangerous fascination with explosives. From June 2021 to September 2023, just over two years, Defendant exhibited this fascination at least three times. Defendant apparently was willing to risk his safety, his career, and the safety of any innocent bystanders first to transport and then to detonate and attempt to detonate explosives, even twice targeting property belonging to others in dense urban areas.

### The Need to Promote Respect for the Law, To Provide Just Punishment, To Afford Adequate Deterrence, and to Protect the Public

Deterrence and promoting respect for the law should be the principal goals of the Court's sentences in this case. To promote respect for the law—both by the Defendant and the public—it is necessary and appropriate to impose a meaningful sentence. Defendant's disregard for U.S. law, and his willingness to risk his safety and that of others to violate the law, illustrate why the recommended sentence is justified to protect this country from new illegal schemes that Defendant, or others, might formulate. A sentence that is too lenient would convey the wrong message and could convince others that expressing your views with violence is worth the risk of getting caught by U.S. law enforcement and facing a relatively minor penalty.

Defendant's prior arrest and conviction in California were insufficient to deter him from continuing to experiment with exploding targets. Indeed, Defendant has pleaded guilty to two

23

separate criminal incidents in which he traveled a great distance from his home, by car, to target installations associated with the Chinese government and leading Communist figures. At the time of his arrest, Defendant was found in Louisiana, driving westbound from his home, with no apparent legitimate purpose. The punishment in this case should be sufficient to specifically deter Defendant from continuing further down this criminal path.

### The Need to Avoid Unwarranted Sentencing Disparities

The starting point in the Court's analysis under § 3553(a)(6) should be to consider the sentences of "defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The government has identified several cases of somewhat similarly situated defendants and includes information on those sentences to the extent they are useful to the Court. Viewed in light of these past sentences, a sentence of ten years would avoid unwarranted sentencing disparities.

- In *United States v. John Rathbun*, (D. Mass. Mastroianni, J.), the defendant was sentenced to five years in prison and three years of supervised release for placing a lit firebomb at the entrance of a Longmeadow senior health care facility on April 2, 2020, and for lying to the FBI about his whereabouts on that day. On June 15, 2021, Rathbun was convicted by a federal jury of one count of attempting to transport or receive explosive devices in interstate or foreign commerce with the knowledge or intent that the device will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle or other real or personal property and one count of attempting to maliciously damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce. On November 13, 2020, Rathbun was convicted

by another federal jury of lying to the FBI by claiming that he had not left his house

on April 2, 2020. *See* https://www.justice.gov/usao-ma/pr/east-longmeadow-man-

sentenced-placing-firebomb-entrance-jewish-nursing-home-and-lying-fbi

(accessed on Oct. 21, 2024). Unlike Defendant, Rathbun was not convicted of a

separate, completed bombing.

- In *United States v. Jessica Reznicek* (D. Ariz. Ebinger, J.), the defendant was

  sentenced to 96 months' imprisonment for conspiracy to damage an energy facility,

  in violation of 18 U.S.C. § 1366(a); the district court applied the terrorism

  enhancement under U.S.S.G. § 3A1.4 and then varied downward. *United States v.*

  *Reznicek*, No. 21-2548, 2022 WL 1939865, at *1 (8th Cir. June 6, 2022). "From

  2016 to 2017, Jessica Reznicek slowed construction on the Dakota Access Pipeline

  by committing arson and acts of vandalism, including using a blowtorch to cut holes

  in the pipeline." *Id*. at *1. Reznicek's sentence was affirmed on appeal. *Id*. at *2.

  Reznicek's co-defendant, Ruby Katherine Montoya, was sentenced to six years in

  prison for conspiracy to damage an energy facility and three years of supervised

  release and ordered to pay $3,198,512.70 in restitution. From November 2016 to

  May 2017, Montoya conspired with other individuals to damage the Dakota Access

  Pipeline at several locations in Iowa and South Dakota. She admitted to damaging

  and attempting to damage the pipeline by: (1) using a cutting torch to burn holes in

  the pipeline, and (2) setting fire to pipeline instrumentation and equipment in three

  Iowa counties. *See* https://www.justice.gov/usao-sdia/pr/arizona-woman-

  sentenced-six-years-prison-conspiracy-damage-dakota-access-pipeline (accessed

  on Oct. 21, 2024).

- In *United States v. Wesley Allen Ayers* (D.S.C. Herlong, J.), the Court sentenced the defendant to 361 months in federal prison and five years of supervised release for using, attempting to use, and threatening to use weapons of mass destruction; possession and discharge of a firearm in furtherance of a violent crime; and use of an explosive device during the commission of a felony. The defendant had admitted that he constructed, and then placed, three explosive devices, weaponized with shrapnel and concealed in household items, in various parts of Anderson County in January and February 2018. A device placed by the defendant on January 30, 2018, at an intersection in Anderson County detonated and injured one individual. The other two devices, which the defendant also placed in or near area roadways, were intercepted and rendered safe by federal, state, and local law enforcement agencies. In that same timeframe, the defendant placed three hoax devices, which resembled explosives but did not contain any blasting agent. With some of those devices, the defendant left threatening messages that more, and more powerful, devices were to come. *See* https://www.justice.gov/usao-sc/pr/anderson-man-sentenced-over-30-years-federal-prison-using-weapons-mass-destruction (accessed on Oct. 21, 2024). This sentence was upheld on appeal as substantively reasonable. *United States v. Ayers*, No. 19-4806, 2021 WL 1250523 (4th Cir. Apr. 5, 2021).

- In *United States v. Seth Aaron Pendley*, Criminal 4:21-CR-00139-O (N.D. Tex. O'Connor, J.), the defendant was sentenced to 10 years in prison for attempting to obtain an explosive device from an undercover FBI employee in Fort Worth. Pendley had told the FBI undercover employee that he wanted to blow up an Amazon data center to damage its servers. He pleaded guilty in June to malicious

26

attempt to destroy a building with an explosive. *See* https://www.justice.gov/usao-ndtx/pr/texas-man-sentenced-10-years-plotting-attack-data-centers (accessed on Oct. 21, 2024).

Defendant's actions in this case—detonating a bomb in downtown San Antonio and attempting to do the same outside the Chinese Embassy in Washington, D.C.—are most similar to those of Pendley, who does not appear to have targeted people and who did not complete his attack. Unlike Pendley, Defendant did complete his first bombing and less than a year later was attempting another. While the government has not seen evidence that Defendant intended to harm any individuals, he was willing to take that risk, not only by detonating and attempting to detonate his bombs but by doing so by shooting at them with a rifle.

The requested sentence is well within the range of previous sentences imposed in similar cases, which satisfies 18 U.S.C. § 3553(a)(6).[7]

### Restitution

The Probation Officer has recommended that Defendant be ordered to pay restitution in the amount of $325,000 to XL Insurance Company, which paid that amount as losses to the owners of the *Miss Mao* sculpture. ECF No. 61 at ¶ 149. We agree with the defense that 26 U.S.C. §§ 5841, 5861(d), and 5871 are not offenses that carry mandatory restitution under § 3663A(a)(2) or to which 18 U.S.C. § 3663 applies. At the same time, Defendant's conviction under Count Three of

---

[7] The PSR notes that, during the last five fiscal years, the 36 defendants with the same primary guideline (§ 2K2.1), final offense level (24), and criminal history category (I) as Defendant who received a prison sentence received an average sentence of 47 months' imprisonment, with a median of 51 months' imprisonment, after excluding defendants who received a §5K1.1 substantial assistance departure. ECF No. 61 at ¶ 154. Without any specifics about those cases, it is impossible to determine how comparable they are to the facts of this case. We can assume, however, that none of those defendants was facing a mandatory minimum sentence of five years, as Defendant is, and therefore none of the offenses of conviction were the same.

the Second Superseding Information directly relates to harm(s) suffered by the creators of the *Miss Mao* sculpture and XL Specialty Insurance Company. The Court may order restitution to these victims as part of the sentence or as a condition of supervised release pursuant to U.S.S.G. § 5E1.1. ECF No. 61 at ¶ 149a.

Section 5E1.1 of the Guidelines permits restitution in all criminal cases, either as a part of the sentence or as a condition of probation or supervised release, depending on the type of offense. Although the Guidelines are now advisory, *see United States v. Booker*, 543 U.S. 220, 246, 259-60 (2005); *United States v. Frith*, 461 F.3d 914, 919 n.2 (7th Cir. 2006), the change from mandatory to advisory sentencing guidelines generally did not affect the rules relating to restitution. *See, e.g., United States v. Bonner*, 522 F.3d 804, 806-08 (7th Cir. 2008); *United States v. Farrington*, 499 F.3d 854, 861 (5th Cir. 2007); *United States v. Gordon*, 393 F.3d 1044, 1051 n.2 (9th Cir. 2004).

In Count Three, Defendant pled guilty to Receipt or Possession of Unregistered Firearm (Destructive Device), in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. As alleged in the Second Superseding Information, on or about November 7, 2022, Defendant knowingly received and possessed a firearm (that is, a destructive device), namely, a quantity of a nitrate explosive mixture, not registered to him in the National Firearms Registration and Transfer Record. ECF No. 51 at 2. The firearm/destructive device Defendant possessed was an explosive device consisting of two canisters containing some quantity of exploding target explosive material. What makes that device qualify as a "destructive device" under 26 U.S.C. § 5845(f) is that it was designed for use as a weapon and not for sporting purposes. In this case, the basis for concluding that the device was designed for use as a weapon is that Defendant placed the two canisters at the foot of the *Miss Mao* sculpture and used a rifle to shoot at the canisters, causing the canisters and their contents to

explode. ECF No. 56 at 2. Had Defendant placed the canisters in an open field and detonated them away from any persons or property, he would not have possessed a destructive device. Accordingly, the damage to the *Miss Mao* sculpture is inextricably linked to the crime to which Defendant pled guilty in Count Three. Defendant acknowledged this link in the plea agreement through which he agreed to a 4-level enhancement to the base offense level pursuant to U.S.S.G. § 2K2.1(b)(6)(B) for use of a destructive device in connection with another felony offense. ECF No. 55 at 4. Any harm suffered by the creators of the *Miss Mao* sculpture and the XL Specialty Insurance Company that are a direct and proximate cause of Defendant's crime are properly included as restitution under U.S.S.G. § 5E1.1. *See United States v. Mounts*, 793 F.2d 125, 127 & 129 (6th Cir. 1986) (affirming restitution order in Title 26 case); *United States v. Beeler*, 1999 WL 1995201, 3 (D. Me. 1999) (same).

## <u>CONCLUSION</u>

WHEREFORE, the government respectfully recommends that the Court sentence Defendant Christopher Rodriguez to a sentence of 10 years in prison, a term of supervised release between one and three years, and restitution in the amount of $325,000.

Respectfully submitted,

EDWARD R. MARTIN, JR.
United States Attorney
D.C. Bar 481866

By:    */s/Jolie F. Zimmerman*
JOLIE F. ZIMMERMAN
D.C. Bar No. 465110
STUART D. ALLEN
D.C. Bar No. 1005102; N.Y. Bar No. 4839932
Assistant United States Attorneys
United States Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, DC 20530
(202) 252-7220 (Zimmerman)
(202) 252-7794 (Allen)
Jolie.Zimmerman@usdoj.gov
Stuart.Allen@usdoj.gov